## SHELTON v. CAIN.†

(Court of Civil Appeals of Texas. April 5, 1911. Rehearing Denied May 10, 1911.)

1. BROKERS (§ 82*)—ACTIONS FOR COMPENSATION—PETITION—SUFFICIENCY.

A petition, in an action by a real estate broker for compensation for procuring a purchaser, which alleges his employment for a specified compensation, and avers that he procured a purchaser able, ready, and willing to purchase on terms satisfactory to the owner, and that he communicated that fact and the name of the purchaser to the owner, who thereafter, by reason of the broker's services, sold the property to the purchaser, states a cause of action.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 101; Dec. Dig. § 82.*]

2. BROKERS (§ 54*)—EMPLOYMENT — COMPENSATION.

Where a broker employed to procure a purchaser, but not given an exclusive agency, procured a purchaser able, ready, and willing to purchase on terms satisfactory to the owner, who was informed of the fact and of the name of the purchaser, the owner could not, by ignoring the broker and acting in person or through another agency, sell the property to the purchaser, and defeat the broker's right to compensation.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 75–81; Dec. Dig. § 54.*]

3. PLEADING (§ 34*)—CONSTRUCTION—LIBERAL CONSTRUCTION—SUFFICIENCY OF PETITION.

In the absence of any special exception to a petition, all reasonable intendments and inference will be indulged in its favor.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 69; Dec. Dig. § 34.*]

4. BROKERS (§ 53*) — COMPENSATION — WHEN EARNED.

Where a broker, having an agency for the sale of land for a specified compensation, found a purchaser to whom the property was sold, notified the owner who the purchaser was, and rendered such services as made him the procuring cause of the sale, and would have rendered all other necessary services if the owner had given him an opportunity so to do, the broker earned the agreed compensation.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. § 53.*]

Appeal from District Court, Mills County; John W. Goodwin, Judge.

Action by R. N. Shelton against G. T. Cain. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

This is an action by R. N. Shelton against G. T. Cain, wherein the plaintiff sought to recover $2,000, alleged to be owing him by the defendant as compensation for services rendered by the plaintiff as a real estate broker. The pleadings presented the special issues which were submitted by the court to the jury, which issues and answers thereto made by the jury were as follows:

"No. 1. Did the defendant, Cain, authorize the plaintiff, Shelton, to exchange, trade, or barter the land in evidence in Navarro county, and the stock and farm machinery referred to in plaintiff's petition, for other lands and property, on such terms as might be

satisfactory to the defendant? Answer: Yes. Jesse Lowe, Foreman.

"No. 2. Did the defendant, if he agreed to let plaintiff exchange, trade, or barter the property referred to in question No. 1, agree that the plaintiff should have the sole and exclusive right to exchange, trade, or barter such property? Answer: No. Jesse Lowe, Foreman.

"No. 3. If the defendant gave plaintiff the exclusive agency to barter, trade, or exchange his property for other land and property, was such agency, if any, general, or did it relate solely to an exchange or trade for the White ranch and property? Answer: Defendant did not give plaintiff exclusive authority of any kind or for any purpose. Jesse Lowe, Foreman.

"No. 4. Did the defendant authorize Harper, Eubanks & King to exchange, barter, or trade the land and property described in plaintiff's petition for other land and property? Answer: Yes. Jesse Lowe, Foreman.

"No. 5. Did the defendant authorize Harper, Eubanks & King to exchange, barter, or trade the land and property described and referred to in plaintiff's petition for the R. R. White ranch and property in Mills county? Answer: Yes. Jesse Lowe, Foreman.

"No. 6. Did plaintiff inform defendant of the R. R. White ranch and property in Mills county, Tex., and that White wished to exchange it for other land and property? Answer: Yes. Jesse Lowe, Foreman.

"No. 7. Did plaintiff inform R. R. White of defendant's land and property, and that he wished to exchange it for ranch lands further west? Answer: Yes. Jesse Lowe, Foreman.

"No. 8. Did Harper, Eubanks & King inform defendant of the White ranch and property, and of the desire of White to exchange it for other land and property? Answer: No. Jesse Lowe, Foreman.

"No. 9. Did Harper, Eubanks & King inform R. R. White of defendant's land and property, and that defendant desired to exchange his land and property for ranch property? Answer: Yes. Jesse Lowe, Foreman.

"No. 10. Who first notified defendant of the White property and his desire to exchange it, plaintiff or Harper, Eubanks & King? Answer: Plaintiff. Jesse Lowe, Foreman.

"No. 11. Who first notified White of the land and property of defendant, and his desire to exchange it for ranch land, plaintiff or Harper, Eubanks & King? Answer: Plaintiff. Jesse Lowe, Foreman.

"No. 12. Did plaintiff promise and agree to go with defendant to see the White ranch? Answer: Yes. Jesse Lowe, Foreman.

"No. 13. Why did not plaintiff go with defendant to see the White ranch? Answer: Did not have an opportunity. Jesse Lowe, Foreman.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

"No. 14. Was the defendant led to go and see the White ranch and to exchange his land and property for the White ranch and property by reason of the information given him by plaintiff concerning said White ranch, or was he led to go to see the White ranch, and to exchange his land and property for same, by reason of the information given him by Harper, Eubanks & King, or either of them? Answer: Defendant was led to go and see the White ranch and property, and to exchange his land and property for the White ranch and property, by reason of the information given him by plaintiff. Jesse Lowe, Foreman.

"No. 15. Did defendant request plaintiff to go with him to Mills county to see the White ranch? Answer: No. Jesse Lowe, Foreman.

"No. 16. Did plaintiff state to defendant that he would not go with him to Mills county to see the White ranch because it was useless; that White would not trade for all of defendant's land? Answer: No. Jesse Lowe, Foreman.

"No. 17. Did defendant tell plaintiff, in substance and effect, that Harper, Eubanks & King had fooled him off to Mills county to look at the land, but for him (plaintiff) to keep quiet and do nothing, and that he (defendant) would see that he (plaintiff) got his commission? Answer: Yes. Jesse Lowe, Foreman.

"No. 18. What, if anything, did defendant agree to pay plaintiff if he effected an exchange of his land and property for him? If he promised to pay anything, has he done it? Answer: $2,000. No. Jesse Lowe, Foreman.

"No. 19. Did defendant exchange his land and property for the White ranch and stock in Mills county, Tex., in July or August, 1908? Answer: Yes. Jesse Lowe, Foreman.

"No. 20. Did Harper, Eubanks & King, or either of them, go with defendant to see White's land, introduce defendant to White, and assist defendant in closing the trade with White? Answer: Yes. Jesse Lowe, Foreman.

"No. 21. Did the plaintiff, after receiving the letter introduced in evidence and purporting to have been written by R. R. White, take any further steps towards effecting an exchange of land with White? If not, why not? Answer: Yes. Jesse Lowe, Foreman.

"No. 22. Had the plaintiff a reasonable certainty of being able to effect an exchange of defendant's property for the White ranch and property on terms that would have been acceptable to the defendant? Answer: Yes. Jesse Lowe, Foreman."

Upon these findings of the jury, the trial court rendered judgment for the defendant, and the plaintiff has appealed.

R. L. H. Williams and E. B. Anderson, for appellant. John C. Darroch and Wilkinson & Lee, for appellee.

KEY, C. J. (after stating the facts as above). Under the first assignment in appellant's brief, the contention is made that the jury found for the plaintiff on the material issues in the case, and therefore it was error to render judgment in favor of the defendant. That proposition is controverted by counsel for appellee; their contention being that appellant's entire case was founded upon the allegation in his petition that, by the terms of the contract sued on, he was given the exclusive agency for the land, and that the findings of the jury to the effect that the contract did not give him such exclusive agency broke down his case and justified the court in rendering judgment against him. That contention would be correct, if the petition sought a recovery solely upon the theory of an exclusive agency and a breach of the contract by appellee, which prevented plaintiff from in any wise performing his part of the contract. But if, by the terms of the contract, appellant became appellee's agent, although such agency may not have been exclusive, still if appellant was the procuring or efficient cause of the sale of appellee's property, he was entitled to recover. Counsel for appellee concede the correctness of that proposition of law, but contend that appellant did not allege in his petition that he rendered such services as constituted the procuring or efficient cause of the trade. As to the averments of the petition in that respect, we quote as follows from appellee's brief:

"Plaintiff's pleading, setting up his contract with defendant, alleges that 'defendant herein employed him to act as his agent or broker, to sell, exchange, trade, or barter certain real estate and personal property owned by defendant and situated in Navarro and Ellis counties (describing same), * * * and to find some person or persons to whom defendant could sell his said property, or with whom the defendant could effect a trade or exchange of his said property, or any part thereof, for the property owned by such person or persons desired by the defendant, and on such terms and conditions as might be satisfactory and acceptable to the defendant, or to put the defendant in communication with any such person, or persons, and in any way possible assist the defendant in negotiating a trade and effecting and consummating a deal, wherein the defendant would be enabled to barter, trade, or exchange his property to such other person or persons for ranch property and live stock in some portion of what was termed by him West Texas, suitable for stock raising and farming, and being the kind and nature of property desired by the defendant, and to be such property as would suit the defendant and be accepted by him in exchange for his property, or for a portion of the same, as aforesaid; the said exchange to be upon terms and conditions acceptable to the defendant, and as might be agreed upon

between the defendant and the owner of such other property. That plaintiff, upon being asked by the defendant his charge for such services, informed him that he would charge him a commission of 2½ per cent. on the gross amount of the consideration received by the defendant for his property so listed with the plaintiff for sale, trade, exchange, or barter, on the terms and conditions above set out. That the defendant objected to paying this commission for the plaintiff's services, and proposed to plaintiff that he would list with him his property aforesaid, for the purposes aforesaid, and would agree and bind himself, and did agree and bind himself, to list the same with no other person or persons, and did agree and bind himself that he would not permit or authorize any other person or persons to represent him in the selling, trading, bartering, or exchanging of the same for other property, provided the plaintiff would represent him therein for a compensation in the sum of $2,000, payable upon consummation of any deal that might be effected, in any manner, through the instrumentality of the plaintiff herein, in the way of finding him such property as he might desire, and getting in communication or putting defendant in communication with the owner thereof, and aiding and assisting him in effecting a deal such as would be acceptable to the defendant.'

"Plaintiff further alleges that, in consideration of his being employed as sole agent and representative of the defendant in the matter of selling, trading, exchanging, or bartering his property aforesaid for other property desired by the defendant, and in consideration of the defendant agreeing and binding himself to refuse to authorize or permit any other person or persons to represent him in the matter of selling, trading, or exchanging his said property, or in aiding or assisting him therein, he agreed to and did accept the defendant's proposition to take the said sum of $2,000 in full payment for his compensation in the matter, and for his services therein, payable upon consummation of any deal that he might make, or in any manner bring about through his instrumentality, as hereinbefore alleged.

"In the seven following sections of his petition, as more fully shown under defendant's next proposition, plaintiff alleges what he did under the terms of said contract, and what defendant failed to do; and charges that defendant violated said contract by listing said property with other agents, and through them trading and exchanging with Dr. R. R. White for other property. Then in an additional count he further alleges: 'That the defendant's employment of other agents or brokers, as hereinbefore alleged, to sell, trade, or exchange his property, as hereinbefore alleged, and his negotiation and closing a deal with them, whereby he exchanged and traded his property aforesaid for that of the said Dr. R. R. White, as aforesaid, and his utterly ignoring the plaintiff and his rights therein, was a breach of and a repudiation of his contract with the plaintiff, as hereinbefore alleged and declared upon, and that on account thereof the plaintiff was deprived of the right and power to make said trade and exchange of the property of the defendant for the property of the said Dr. R. R. White, as he had reasonable assurance he could and would do, as hereinbefore alleged, and that on account of said breach of his contract aforesaid the defendant became liable and promised to pay to plaintiff his damages on account thereof in the sum of $2,000,' for which he prayed judgment.

" 'Plaintiff further alleges that in pursuance of his duties under said appointment and employment he at once entered upon his duties thereunder, and learned that one Dr. R. R. White of Temple, Tex., owned a large, valuable, and desirable ranch located and situated in Mills county, Tex., together with a considerable number of horses, mules, cattle, and other live stock and property situated and located thereon, all of the estimated value of $100,000, and being the kind of property that was desired by the defendant, and that said Dr. R. R. White desired to sell, trade, or exchange the said property owned by him for other property more suitable to his taste, convenience, and purpose. That the plaintiff entered into communication with the said Dr. R. R. White in person, as well as through his representative, and obtained from the said Dr. R. R. White in person a description of his property aforesaid, and afterwards communicated such description to the defendant, and informed him that he could, with reasonable certainty, effect an exchange of the defendant's property for the property of the said Dr. R. R. White on terms and conditions agreeable and acceptable to both parties. That the defendant expressed himself interested in said proposition, and stated to the plaintiff that he believed that the property owned by Dr. R. R. White was just the kind of property that he wanted, and agreed to accompany the plaintiff to said ranch in Mills county Tex., and carefully inspect the said property owned by the said Dr. R. R. White as soon as he could find time out of his crop to do so; the same being at a very busy season of the year.'

"After stating in the two next sections of his petition that he was at all times ready to push said negotiations and close said deal, and frequently urged defendant to go with him and inspect said land, and defendant deferred the matter, but assured him that no one else should have said agency, said petition runs thus: 'Plaintiff further alleges that the defendant, notwithstanding his promise and obligation to the plaintiff, afterwards, without the knowledge and consent of the plaintiff, and concealing his intention from the plaintiff, afterwards listed his prop-

erty aforesaid with another person or firm of land agents or brokers for sale, trade, or exchange, and afterwards traded and exchanged his property aforesaid, valued at $100,000, to the said Dr. R. R. White for his aforesaid ranch in Mills county together with a large number of horses, mules, cattle, and other live stock thereon, and other personal property valued by them at $100,000 through the aforesaid firm of land agents in Ennis, Tex., utterly disregarding his obligation and contract with the plaintiff, and ignoring him in said transaction. * * * That the said deal or trade between the defendant and the said Dr. R. R. White was made on or about the 28th day of October, 1908, on terms and conditions that were acceptable and agreeable to the defendant, and that the plaintiff had reasonable assurance that he could and would have closed a like deal between the defendant and the said Dr. R. R. White, on terms equally, if not more, acceptable to the defendant, than the terms upon which he did close the same. Plaintiff further alleges that the defendant, by reason of his promise and obligation aforesaid, and by reason of the fact that the plaintiff procured a buyer for the property of the defendant, or a person with whom he could make a trade, exchange, or barter of his property, as aforesaid, and communicated that fact to the defendant, and the defendant, by reason of thereafter making such trade, barter, or exchange with the said Dr. R. R. White, became liable and promised to pay to the plaintiff the said sum of,' etc."

[1] We are of opinion that the plaintiff's petition alleged facts showing that he found a purchaser who was able, ready, and willing to purchase the defendant's property on terms satisfactory to him; that he communicated that fact and the name of such purchaser to the defendant; and that thereafter, by reason of the services so rendered, the defendant sold his property to the purchaser referred to.

[2] After the plaintiff had rendered that service, although his agency may not have been exclusive, the defendant could not, by ignoring him and acting in person or through another agency, sell the property to the same purchaser and defeat the plaintiff of his right to recover compensation. Hancock v. Stacy, 125 S. W. 884.

[3] While on this branch of the case the petition is not as full and specific as it might have been, we do not think its averments are contradictory; and, in the absence of a special exception (which was not urged against it), all reasonable intendments and inferences are to be indulged in its favor; and we therefore hold that it is sufficient to authorize a recovery upon that theory.

[4] The verdict having found that the plaintiff had an agency for the sale of the

land; that he was to receive $2,000 as compensation; that he found the purchaser to whom the property was sold, notified the defendant who the purchaser was, and rendered such other services as constituted him the procuring and efficient cause of the sale, and would have rendered all other necessary services, if defendant had given him an opportunity to do so—we conclude that the judgment should be reversed and rendered for appellant against appellee for $2,000, with interest thereon at the rate of 6 per cent. per annum from the 1st day of January, 1909, and it is so ordered.

Reversed and rendered.