### BELLIS v. HANN & KENDALL.

(Court of Civil Appeals of Texas. Dallas. May 3, 1913. Rehearing Denied May 31, 1913.)

1. BROKERS (§ 53*) — COMMISSIONS — WHEN EARNED.

Where a purchaser for real estate is procured through the instrumentality of a broker, such broker is, as a general rule, entitled to commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. § 53.*]

2. BROKERS (§ 86*) — COMMISSIONS — WHEN EARNED—EVIDENCE.

Evidence *held* to support a finding that a broker employed to procure a purchaser of real estate was the efficient and procuring cause of a sale actually made by another broker, authorizing a recovery of commissions.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 116–120; Dec. Dig. § 86.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**3. BROKERS (§ 55*) — COMMISSIONS — WHEN EARNED.**

The rule that a broker, employed to procure a purchaser who is the efficient and procuring cause of a sale, is entitled to his commissions, applies where the property is sold for a less sum than originally demanded by the owner, when employing the broker, though the sale is actually made to the same purchaser by another broker.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 82–84; Dec. Dig. § 55.*]

**4. BROKERS (§ 55*) — COMMISSIONS — WHEN EARNED.**

An owner authorizing several brokers to sell real estate for a specified price may consummate the sale through the broker first producing a customer, but he must not interfere in favor of one broker to the disadvantage of another.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 82–84; Dec. Dig. § 55.*]

Appeal from Dallas County Court; W. F. Whitehurst, Judge.

Action by Hann & Kendall against E. A. Bellis. From a judgment for plaintiffs, defendant appeals. Affirmed.

Spence, Knight, Baker & Harris and Alex F. Weisburg, all of Dallas, for appellant. Dabney & Townsend, of Dallas, for appellees.

RASBURY, J. Appellees sued in the court below, alleging that appellant had employed them to sell a house and lot in the city of Dallas and agreed to pay them certain commissions in the event they found a purchaser for the property, and that through their efforts the property was sold. Appellant answered the suit by general demurrer and general denial. Trial by jury resulted in verdict for appellees, followed by judgment of the court. From said proceeding this appeal is taken.

The undisputed facts in the case are, in substance, that the property of appellant, a residence in the city of Dallas, was placed in the hands of appellees and other agents to be sold; the appellant reserving the right to sell also. Appellees at all times knew that the property was listed with other agents and that appellant reserved the right to sell. The property was listed with appellees in June, 1909, at the gross price to appellant of $7,250. Appellees did their best to sell the property, and, among other things, advertised it for sale for five Sundays in a newspaper between June 20, 1909, and August 1, 1909, and for four consecutive days, beginning August 26, 1909. Julius Oppenheim was a frequent visitor at the office of appellees on matters of business, and, knowing that he and his sister were in the market for a home, appellees called his attention to appellant's property, and some time in June or July, of 1909, appellees induced them to inspect same. The Oppenheims were pleased with the appearance of the property and secured the keys and made an inspection in detail of the premises.

A sale was not effected for the reason that the Oppenheims would not pay the price demanded. Appellees believed that they were interested, however, and on July 13, 1909, wrote appellant as follows: "Dear Sir: Some time ago we showed your house on Boulevard to Mr. A. F. Oppenheim and his sister, Miss Rose Oppenheim, who seemed at the time very well impressed with it. We have had the matter up with them since at different times and they are still interested but we have not yet been able to get them to finally close. It may be that they will take the matter up directly with you, or through another source, and should they do so, please be advised that they are customers of ours, and we are doing the best we can to handle them. We are making every effort to sell the property and while things are slow just now, we hope to be able to eventually report a sale to you. Yours very truly, Hann & Kendall." On the following day, July 14, 1909, appellant wrote appellees as follows: "Dear sir: Yours of the 13th to hand and note what you say in regard to Mr. Oppenheim. I have not heard from them at all and if I do I shall refer them back to you. You can rest assured of that. Am very much pleased at your taking the interest in selling the place that you are. By the way, Mr. Wertheim, the junk dealer, wrote me about the place early last spring. It might be you could interest him, being on the ground. Wishing you success in selling, I am, yours very truly, E. A. Bellis."

Appellees, through Lawrence Miller, a member of appellees' firm, continued to discuss the purchase of the premises with the Oppenheims until about September 14th, when Miller left the city on vacation. The record fails to show when the Oppenheims bought the property, but appellees ascertained that fact about October 7, 1909. The Oppenheims looked at many places prior to inspecting appellant's place, but did not examine any other place after being shown appellant's place; appellant's place being the only one they really liked. The only reason they did not buy the place through appellees was on account of the price. Miss Rose Oppenheim left Dallas in late August, returning in September, after an absence of perhaps one month. Shortly after her return she advertised for a house, and Mrs. Sharp, one of the other agents who had the premises of appellant for sale and which fact was known to appellees, after much negotiation with both appellant and the Oppenheims, concluded a sale of the property to the Oppenheims at the price of $6,650, many agents offering her the identical place, though appellees did not renew negotiations with Miss Oppenheim after her return in September. The Oppenheims offered Mrs. Sharp $6,500, which she submitted to appellant, who agreed to accept said amount net to him. Mrs. Sharp then induced the

Oppenheims to raise their offer to $6,650, and the appellant to further reduce his price to $6,400, and on that basis the trade was closed; ' Mrs. Sharp receiving the difference between $6,650 and $6,400 as her fee. Before the transaction was concluded and while Mrs. Sharp was discussing the matter with appellant, she reported to him that the Oppenheims had advised her that appellees had been negotiating with them for the purchase of the same place but that all negotiations had been dropped. Appellant then stated that if the Oppenheims would make such a statement the deal might be concluded. A signed statement to such effect was made by Miss Oppenheim. The lowest price at which appellant authorized appellees to sell was $7,250. The offer made to appellees by the Oppenheims was $6,500. This offer was not submitted to appellant. Mrs. Bellis, wife of appellant, testified that she gave the name of the Oppenheims to both appellees and Mrs. Sharp, while Miller, one of the firm, says she did not. Mrs. Sharp says that she did not know the Oppenheims wanted the place until they telephoned her in response to an advertisement she (Mrs. Sharp) had placed in a newspaper, and they went to the place, when the Oppenheims told her they had been negotiating with appellees and had been unable to purchase because they would not pay the price demanded. The finding of the jury, however, would seem to resolve that disputed point in favor of the appellees.

[1, 2] All assignments of error attack the sufficiency of the testimony to sustain the verdict of the jury, and hence, from our view of the case, the question narrows, under the general rules of law applicable in such cases, to whether there was sufficient testimony to sustain the finding of the jury that appellees were the efficient or procuring cause of the sale. Generally speaking, if the purchaser is found by the broker's efforts and through his instrumentality, he is entitled to compensation, since he is the efficient or procuring cause of the sale. Graves v. Bains, 78 Tex. 92, 14 S. W. 256. In the instant case the evidence was conflicting as to who found the customer; appellees and the Oppenheims, in effect, testifying that the place was first called to their attention by appellees' manager, while appellant's wife says she mentioned the Oppenheims as probable purchasers to both appellees and Mrs. Sharp, the other agent, although Mrs. Sharp states in substance that she did not know the Oppenheims were interested until she went to the place with them after they had read an advertisement Mrs. Sharp had placed in a newspaper. Whether the purchase by the Oppenheims, after declining to pay the price asked by appellees and fixed by appellant, was due to some efficient and procuring cause exercised or brought to bear by Mrs. Sharp, or was due to similar causes on the part of appellees, or was due alone to the more fav-

orable terms made to Mrs. Sharp, we are unable to say. The Oppenheims say they were at all times pleased with the place and that the reduction in the price was what finally induced their purchase. In any event, that issue was for the decision of the jury in the light of all the facts and circumstances. Nor can we say that the facts indisputably established an abandonment by appellees of their efforts to sell to the Oppenheims. Appellees' letter quoted herein conveyed to appellant not only the fact that they had found a customer pleased with the place, but that appellees were making every effort to sell, giving the 'name of the customer, and asking appellant to protect them against other agents who might learn the name of their customer and attempt to profit thereby. Appellees' manager also testifies that he discussed the purchase with the Oppenheims up to about the middle of September, when the manager left the city on his vacation, and this is not denied by the Oppenheims, nor any other witness. Appellant himself seems to have been of that opinion, as evidenced by his demand that the Oppenheims furnish him a signed statement that they had "dropped" all negotiations with appellees. So that it also occurs to us that the question of abandonment was for the jury.

[3] Nor do we think the fact that the property was sold for a less sum than demanded by the owner in any respect changes the rule that the agent who is the efficient and procuring cause of the sale is entitled to his commissions. Otherwise, the owner could avail himself of the information and industry of the agent, and, by reducing the price to a sum less than the agent's fees, receive the benefits thereof and refuse to pay the price of such services. In Graves v. Bain, supra, the court say: "Where the price or terms of the sale are fixed by the seller, in accordance with which the broker undertakes to produce a purchaser, yet if upon procurement of the broker a purchaser comes with whom the seller negotiates and thereupon voluntarily reduces the price of the thing to be sold, or the quantity, or otherwise changes the terms of sale as proposed to the broker so that the sale is consummated, or terms or conditions offered which the party proposing to buy is ready and agrees to accept, then in either' such case the broker will be entitled to his commissions." See, also, Byrd v. Frost, 29 S. W. 46. In like manner the rule applies, although the transaction is concluded through the medium of a second broker, when it is shown that the exertions of the first broker are the procuring cause of the sale. Duval v. Moody, 24 Tex. Civ. App. 627, 60 S. W. 269; Wood v. Wells, 103 Mich. 320, 61 N. W. 503.

[4] Nor do we think that under the evidence adduced upon the trial of this case it can be said to come within the facts and rules announced in Edwards v. Pike, 49

Tex. Civ. App. 30, 107 S. W. 586, as ably contended by counsel for appellees. Without attempting to state the facts in that case, the point decided was that the owner of property may authorize more than one broker to sell his property, and "so long as he remains neutral" may consummate the sale through the agent who first produces a customer, and adds that the most that known competitive brokers can expect of the owner of property is "that he will not interfere in favor of the one or the other." Was appellant neutral under the evidence in this case? Did ·he not interfere in behalf of Mrs. Sharp, when he gave her a less figure on the place than that given appellees? Could Mrs. Sharp have induced the Oppenheims to buy if this advantage had been withheld? Did not appellant himself recognize the fact that he was interfering. in behalf of Mrs. Sharp, when he demanded a signed statement from the Oppenheims that they had "dropped" the purchase of the place through appellees? These were all material inquiries and clearly raised by the evidence, and of course to be determined by the jury.

As indicated, we are of opinion that the evidence was sufficient to take the case to the jury on the question of who was the efficient and procuring cause of the sale, and, holding that opinion, we conclude there was no error in the judgment of the court below, and it is hereby affirmed. .