## SHAW et al. v. FAIRES.

(Court of Civil Appeals of Texas. Dallas. March 28, 1914.)

1. BROKERS (§ 53*)—CAUSE OF SALE.
    A broker is entitled to commissions if a purchaser is procured through his efforts.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 74; Dec. Dig. §. 53.*]

2. BROKERS (§ 55*)—CAUSE OF SALE.
    A broker is entitled to commissions if his efforts are the procuring cause of the sale, though it may be concluded through a second broker.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 82–84; Dec. Dig. § 55.*]

3. APPEAL AND ERROR (§§ 994, 1002*)—FINDINGS—CONCLUSIVENESS—CONFLICTING EVIDENCE.
    The finding of the jury on conflicts in the evidence and the credibility, of witnesses and the weight of their testimony is conclusive.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3901–3906, 3935–3937; Dec. Dig. §§ 994, 1002.*]

---

**4. BROKERS (§ 88*)—ACTIONS FOR COMMISSIONS—JURY QUESTION.**

In a broker's action for commissions for procuring the sale of realty, evidence *held* to make it a jury question whether the broker procured the purchaser.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 121, 123–130; Dec. Dig. § 88.*]

**5. SET-OFF AND COUNTERCLAIM (§ 35*)—"UNLIQUIDATED DEMAND."**

A counterclaim for commissions for procuring a sale of property was not an "unliquidated demand," so as not to be a proper counterclaim, under Rev. Civ. St. 1911, art. 1329, though the parties did not agree upon the amount of commissions to be paid, since the law implies that the usual charge shall be paid.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 58–64; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 8, p. 7195.]

**6. SET-OFF AND COUNTERCLAIM (§ 29*)—COUNTERCLAIMS ALLOWABLE—MATTERS INCIDENT TO PLAINTIFFS' ACTION—"INCIDENT TO THE SAME TRANSACTION."**

Where defendant was employed to sell plaintiffs' property, insure it, collect rents, etc., and in the performance of such contract earned commissions for selling the property, his claim for commissions was a proper counterclaim, in an action by plaintiffs for money collected by defendant as rents, etc., being incident to the same transaction, within Rev. Civ. St. 1911, art. 1330.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 49–51; Dec. Dig. § 29.*]

**7. LIMITATION OF ACTIONS (§ 63*)—COUNTERCLAIM.**

If, when plaintiff filed his suit, defendant owned a subsisting counterclaim, which was not barred by the two-year limitations (Rev. Civ. St. 1911, art. 5687, subd. 2), that the bar was completed before the counterclaim was pleaded would not prevent defendant from setting off the counterclaim at any time during the suit, though, if he did not assert it until after two years from the time of its accrual, he could not recover thereon for any excess over plaintiff's demand.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 343; Dec. Dig. § 63.*]

**8. HUSBAND AND WIFE (§ 232*)—CONTRACTS BY WIFE—CONSENT OF HUSBAND—EVIDENCE.**

In a counterclaim on a contract by a married woman, authorizing defendant to sell her property for commissions for making the sale, evidence *held* to show that plaintiff's husband consented to the making of the contract with defendant.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 844–848, 981; Dec. Dig. § 232.*]

Appeal from Grayson County Court; J. Q. Adamson, Judge.

Action by Florence F. Shaw and another against Walter S. Faires, in which defendant filed a counterclaim. From a judgment for defendant on the counterclaim, plaintiffs appeal. Reformed and affirmed.

J. H. Randell, of Denison, for appellants. Wolfe, Wood & Haven, of Sherman, for appellee.

RASBURY, J. Appellant Florence F. Shaw, joined pro forma by her husband, V. B. Shaw, sued appellee for a sum of money collected by him for appellant and alleged to have been by him wrongfully and fraudulently retained and converted to his own use.

Appellee, following certain preliminary matters which have no bearing upon the issues presented by this appeal, admitted the collection of the money and liability therefor, less certain amounts paid out on authority of appellant Florence F. Shaw and for her use and benefit. Appellee further asserted by way of counterclaim that appellants were due him certain money in excess of the amount due by him to appellants, for commissions earned by him in selling for appellant Florence Shaw certain real estate, and asked judgment against appellant Florence F. Shaw for the difference in the claims.

By supplemental petition appellants urged, omitting matters not material here, as special defensive matter against the counterclaim that the set-off and counterclaim was two years past due, and hence barred by limitations, and coverture.

There was a trial by jury; the verdict being: "We, the jury, find for the defendant on his cross-action in the sum of $431.25, and that said amount be credited with the funds now held by defendant belonging to the plaintiff." Upon the verdict judgment was entered for appellee Faires for $431.25 against Florence F. Shaw and her husband, V. B. Shaw, upon which a credit was directed of $3,374.42, being the amount agreed by all parties to be due by appellee to appellant Florence F. Shaw. The judgment also directed that execution for the balance should issue and be levied upon the separate property of Florence F. Shaw. From such judgment this appeal is taken.

It may be said that the following facts are undisputed: Appellant Florence F. Shaw and appellee many years prior to the transactions involved in this suit resided in Denison and were childhood friends. About 10 years before trial she left Denison with her parents, removing to Kansas City, Mo. There her mother died, and there she married and removed to Bellingham, Wash. At her mother's death she became (by inheritance we presume) the owner of a three-fourths interest in a two-story brick building, and the land on which it was situate, blocks 9 and 10 in Cyrine Park addition, 10 acres in Woodlawn boulevard, and nine vacant lots, all within or adjacent to the town of Denison. At this point sharp conflicts arise in the testimony. We only state those facts which were proven, though disputed, considered necessary to sustain the judgment, foregoing any attempt to reconcile same, since that duty is the peculiar function of the jury. About five years prior to the controversy involved in this appeal, Mrs. Shaw visited Denison and employed appellee, who was engaged in the insurance and real estate business, to sell her property, keep her storehouse insured, oversee repairs

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

thereon, and inform her with reference to her taxes, and sometimes collect her rents, though not usually. The agreement was verbal, and the amount of commissions in case of sale was not agreed upon. Subsequently, although the approximate date even is not given, appellee sold the two blocks of land in Cyrine Park addition, also two other blocks of land, as well as a 10 or 11 acre tract of land, in consideration of all of which Mrs. Shaw paid him a commission of 5 per cent. The customary and usual commission for such sales in Denison, in the absence of agreement, is 5 per cent. of the amount of the sale price and the amount allowed appellee by the jury. Mrs. Shaw sold the storehouse to M. D. Brazile about February, 1910, for $11,500. Prior to the sale to Brazile, and after the placing of the property with appellee for sale by Mrs. Shaw, appellee negotiated with Brazile, who owned a building adjoining, for the purchase of Mrs. Shaw's property, in fact negotiated with him for quite a long time. Brazile testified in the case and corroborated appellee's claim that he negotiated with him, although Brazile fixes the period of last negotiation at two years prior to the time he finally bought it, and appellee, so far as the record discloses, did not attempt to fix the date of his last negotiation with Brazile. Brazile concluded no purchase through appellee, but after his negotiations with him, and just prior to his purchase of the property, he secured Mrs. Shaw's address from her tenant and wrote her, making an offer for the property. The offer Mrs. Shaw referred to her father at St. Louis, and wired appellee, asking business conditions at Denison, and whether he would or not recommend that she sell. At this time Mrs. Shaw had not withdrawn from appellee the right to sell her property. Appellee advised Mrs. Shaw in answer to her telegram not to sell, as he thought he could secure $11,500 for the property. Mrs. Shaw's father, after learning that appellee had advised Mrs. Shaw not to sell, wrote appellee that it was Brazile who was offering the $11,000, but that he would defer closing with him if appellee could get more from another. Appellee did not reply to him. Negotiations between Mrs. Shaw's father and Brazile were abandoned for a while, but resumed later, when Brazile offered $11,500 for the property, and which was accepted.

We will not attempt to discuss the many assignments seriatim, but will discuss the issues raised thereby as such. We are of opinion that the evidence is sufficient to sustain the verdict and judgment.

[1] Generally speaking, the law is that, if a purchaser is found by the broker's efforts and through his instrumentality, he is entitled to compensation, since he is the procuring or efficient cause of the sale. Graves v. Bains, 78 Tex. 92, 14 S. W. 256; Bellis v. Hann & Kendall, 157 S. W. 427.

[2] In like manner is the broker entitled to his compensation if his exertions be the efficient and procuring cause of the sale, notwithstanding the sale may be concluded through the medium of a second broker. Bellis v. Hann & Kendall, supra; Duval v. Moody, 24 Tex. Civ. App. 627, 60 S. W. 269; Wood v. Wells, 103 Mich. 320, 61 N. W. 503.

[3, 4] In the instant case the facts in our opinion raise the issue, the determination of which concludes our function in that respect, since it then becomes a question for the jury whose duty it is, as we have said, to reconcile the conflicts and to pass upon the credibility of the witnesses and the weight to be given their testimony, and, if in that respect the jury concluded, as it probably did, that appellee procured Brazile as a purchaser, the fact that appellants concluded the transaction through Mrs. Shaw's father would not alter the liability.

[5] It is next urged that appellant's cause of action by the provisions of article 1329, R. S. 1911, which regulates the character of counterclaim that may be set off against the plaintiff's demand, is a certain or liquidated demand, and that appellee's counterclaim is an uncertain and unliquidated demand, and for that reason may not be set off against appellant's demand. We think the contention unsound. In Jones & Co. v. Hunt, 74 Tex. 657, 12 S. W. 832, it was held that a suit to recover money deposited with another under facts analogous with those in the instant case, and by him wrongfully converted, was a suit upon a certain demand. In the same case it was also said that the test of whether the counterclaim was by the provisions of the statute unliquidated and uncertain depended upon whether the same sounded in tort. The commission of a tort in the cases cited is said to be the infringement of a right created otherwise than by contract. Thus, by the rule stated, it is seen that the counterclaim asserted in the instant case is not one sounding in tort, but in contract. The fact that in making the contract the parties failed to agree upon the commission to be paid is immaterial, and makes the claim none the less certain, since by operation of law the usual and customary charges for the performance of such services are read into the contract.

[6] We are also of opinion that the counterclaim was a proper one, for the further reason that, by the succeeding article (1330) all counterclaims founded on a cause of action arising out of or incident to or connected with plaintiff's cause of action are excepted from the provisions of article 1329, and in our opinion includes within its provisions the counterclaim asserted by appellee. By appellee's testimony and the finding of the jury he was employed by appellant Mrs. Shaw to sell her property, insure it, oversee repairs, report the taxes, and sometimes collect the rents. In the performance of this contract appellee collected the rents sued for by appellants and earned the commissions

urged in his counterclaim, and hence both claims arose out of, were incident to, and connected with such contract, since arising is springing from, coming into being, beginning, originating, and incident, is appertaining to or following another thing, and connected, is related matters, etc.

It is also urged that the counterclaim for commissions accrued more than two years before it was asserted, and was hence barred by the provisions of subdivision 2 of article 5687, R. S. 1911, requiring suits for debt not evidenced by contract in writing to be commenced and prosecuted within two years after the cause of action shall have accrued.

[7] Without attempting to discuss the fundamental reasons underlying the rule, it may be said to be settled that if, at the time the plaintiff files his suit, the defendant is the owner of a subsisting counterclaim, as contemplated by the statute, which at said time is not barred by the two years' statute, the fact that the bar is completed before the counterclaim is urged in a proper pleading will not deprive defendant of the right to set off such counterclaim against plaintiff at any time during the progress of the suit. Such result is not true because of any suspension of limitation, but on the principle that such mutual accounts extinguish one the other pro tanto whenever plaintiff declares upon his demand. Crook et al. v. McGreal et al., 3 Tex. 487; Holliman v. Rogers, 6 Tex. 91; Walker v. Fearhake, 22 Tex. Civ. App. 61, 52 S. W. 629. But, in the application of the rule, it is also clear that, if the defendant did not assert his counterclaim until after the expiration of two years from the time of its accrual, he would not be entitled to recover thereon for any excess in his counterclaim over the plaintiff's demand. In that respect we have labored under some difficulty in the instant case, due to the condition of the record. It is shown that appellants filed suit August 17, 1910. Appellee's counterclaim accrued February 10, 1910. So that, when the suit was filed, the bar had not intervened, and the result was that by operation of law appellants' claim was completely extinguished, and likewise appellee's, except the excess of $93.83. In order to have entitled appellee to a judgment for the difference between the claims, he must have filed his plea of counterclaim within two years after the accrual of his right to sue. The transcript of the pleading fails to show that he did so, since all it contains is an amended answer filed May 23, 1912, asserting, so far as the record discloses, for the first time, the counterclaim. On that date, however, the counterclaim was barred so far as any right to affirmative relief for the excess is concerned. Consequently, the issue of limitation being raised and the record as stated, the judgment for appellee for the excess in claim is not supported, and it was error to award the same.

It is further asserted that the court erred in entering the judgment it did enter, because Mrs. Shaw was a married woman and not bound upon the contract, because not consented to by her husband, and not for the benefit of her separate estate. Conceding that the issue is properly raised by attack upon a charge correct as far as it goes, or is raised by attacking the court's refusal to peremptorily direct verdict for appellants, we nevertheless conclude that coverture under the evidence in the record offers no bar to appellee's right to recover. The property was the separate property of Mrs. Shaw. It was sold for the best obtainable price, and Mrs. Shaw's husband joined in the deed. The evidence shows that the sale was for the benefit of Mrs. Shaw's separate estate, since she herself testifies that it was advantageous for her to sell and invest and use the money at her place of residence. The circumstance that Mrs. Shaw's husband was not present when the contract to pay commissions was made is insufficient to support the inference that he did not consent thereto. The fact that Mrs. Shaw made the contract and that her husband joined in the deed on the other hand supports the conclusion that it was with his consent and agreement that she journeyed to Denison and there made the contract with appellee.

[8] It may be argued that the questions should have been submitted to the jury, but we think not, since, under the undisputed facts, no other verdict on such issues could properly have been found.

There are other assignments of error, all of which we have carefully considered, and none of which, in our opinion, constitute reversible error. Some of them may show technical error, but the record discloses it to have been either harmless or cured by other proceedings.

In consonance with the views expressed, the judgment of the court below in favor of appellee for $93.83 is set aside and held for naught, but in all other respects the said judgment is affirmed. Costs of appeal are adjudged against appellee.

Reformed and affirmed.