**CLEVELAND v. KEENER et al.   (No. 9718.)**

(Court of Civil Appeals of Texas. Fort Worth. Jan. 21, 1922. Rehearing Denied March 11, 1922.)

1. **Brokers** ⬅⟹55(1), 57(2)—**After broker has earned commission by procuring purchaser, owner cannot deprive him thereof by modifying terms, or employing another broker.**

After a broker has earned his commission by procuring a purchaser ready, able, and willing to buy at the price and on the terms satisfactory to the owner, the latter cannot deprive him of compensation by voluntarily modifying the terms of payment, or by employing another broker to assist in the final negotiations.

2. **Brokers** ⬅⟹66—**Broker's recommendation of stock taken as part payment for a lease held not to support a claim to part of commission earned by other broker.**

Where a broker's sale of stock was separate and distinct from the sale of a lease listed with

him, but sold to a customer procured by another broker, his recommendation of the stock taken in part payment could not be made the basis of a claim to part or all of the commission which was earned by the other broker, though it incidentally influenced the sale to such customer, whom he suggested as a possible purchaser, but failed to find for him, and never brought to the seller until the other broker introduced them, when the terms of the trade were agreed to.

**3. Costs ⚷172—Defendant sued with broker held not entitled to deduct from commission awarded codefendant attorney fee for filing answer.**

In a suit by a broker for a commission for the sale of a lease wherein another broker made a defendant was awarded recovery of the entire commission, the defendant principal was not entitled to have deducted from such commission an allowance of an attorney's fee for filing answer admitting that he owed one or both brokers, and offering to pay whoever might be shown to be entitled.

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Suit by W. H. Keener against J. D. Smoot for brokers' commission, in which C. J. Cleveland was also made a party defendant. Verdict and judgment against the defendant Smoot in favor of the plaintiff and the defendant Cleveland, giving each one-half of the commission, but deducting from the whole amount of the commissions a $100 attorney's fee to the defendant Smoot for filing answer, and the defendant Cleveland appeals. Reversed and judgment rendered for defendant Cleveland against the defendant Smoot for the entire commission, with interest, and denying the defendant Smoot attorney's fees as against defendant Cleveland, and cause remanded as between plaintiff and the defendant Smoot.

Callaway & Callaway, of Comanche, for appellant.

Y. W. Holmes and J. P. Graham, both of Comanche, for appellees.

DUNKLIN, J. J. D. Smoot owned a tract of land in Eastland county in an oil-producing district. He listed the same with two brokers, each of whom was authorized to procure some one to take over an oil and gas lease on the property for the purpose of developing it for production of those commodities. The two brokers were C. J. Cleveland, residing at Rising Star, in Eastland county, near the property, and W. H. Keener, residing at Comanche, Comanche county. J. D. Smoot also resided in the town of Comanche. The price fixed by Smoot for an oil lease on his land at the times he listed the property with both agents was $1,000, and he agreed with each agent to pay a commission of 5 per cent. for procuring a purchaser of the lease. On April 16, 1920, J. D. Smoot was in the town of Rising Star, some 30 miles distant from the town of Comanche, and while there Cleveland told him that he had a prospective purchaser for the lease in one I. S. Broyles, as the agent and representative for the American Profit Sharing Company of Dallas, and thereupon introduced Smoot to Broyles as a prospective purchaser. Smoot and Broyles and Cleveland then entered into negotiations, which resulted in a proposition from Smoot to sell an oil and gas lease to the American Profit Sharing Company, then represented by Broyles, for a consideration of $35,000, $5,000 of which was to be paid in capital stock in the American Profit Sharing Company, and $30,000 in money, one half to be paid in cash and the other half in 30 days. The proposition so made was accepted by Broyles as the representative of his company, subject, however, to the approval of the same by J. B. McEntire, the president of the company. Smoot's proposition was then reduced to writing and delivered to Broyles, who agreed to take the same to Dallas, submit it to Mr. McEntire, and wire Mr. Smoot on the following day whether or not his company, acting through its president, would accept the proposition so made by Smoot. On the following day, which was April 17, 1920, Broyles wired to Smoot, care of Keener at Comanche, Tex., as follows:

"Our company will accept your proposition. Can you come to Dallas early Monday morning to close details of contract and advise us about vice presidency. Wire collect X four six eight one. [Signed] I. S. Broyles."

On the same day Broyles wired to C. J. Cleveland at Rising Star, Tex., as follows:

"McEntire and myself will go to Comanche Monday and close deal. Push drilling contract negotiation as agreed upon.
"[Signed] I. S. Broyles."

The telegram so sent to Smoot was received at Comanche by Keener for him, and in answer thereto Keener wired Broyles on the same day as follows:

"Comanche, Texas, April 17, 1920.
"I. S. Broyles, 1302 Commerce, Dallas, Texas. I answer for Smoot that he will be there Monday A. M. [Signed] W. H. Keener."

When Smoot received the telegram from Keener and was informed by him of Keener's reply thereto, he wired to Broyles as follows:

"Comanche, Tex. April 17, 1920.
"I. S. Broyles, 1302 Commerce St. Dallas, Tex. I cannot come to Dallas. If you want the lease come to Comanche as wife will have to sign. [Signed] J. D. Smoot."

In reply to that telegram the following telegram was sent to Smoot by Broyles:

"Dallas, Tex. April 17, 1920.

"J. D. Smoot c/o W. H. Keener or 1st Natl. Bk., Comanche, Tex. McEntire or myself will come to Comanche Monday as requested in wire.　　　　　　[Signed] I. S. Broyles."

And on the same day Keener sent the following telegram to Broyles:

"Comanche, Tex. April 17, 1920.

"I. S. Broyles, 1302 Commerce, Dallas, Tex. Rev. J. D. Smoot all right looking for you Monday A. M.　　　　[Signed] W. H. Keener."

April the 17th, the date of those several messages, was on Sunday. On Monday following Broyles went to Comanche, where he was met at the station by Keener, who took him in his car to Smoot's residence, where all three discussed the proposition at considerable length, and those negotiations resulted in the execution of a written contract, which was signed by Smoot and the American Profit Sharing Company, by I. S. Broyles. By the terms of that contract Smoot gave the lease to that company, the consideration being $5,000, to be paid in capital stock in the company, $15,000 to be paid in money, $10,000 of which was to be put in escrow in the First National Bank awaiting an examination of the title to the property, and $5,000 to be paid at the expiration of five days from the date of the contract. The remaining $15,000 was to be paid within 40 days from the date of the contract. Thereafter Smoot received from the American Profit Sharing Company full payment of the consideration stipulated in that contract.

W. H. Keener instituted this suit against J. D. Smoot to recover a commission of 5 per cent. which he alleged he had earned by procuring the sale of the lease to the American Profit Sharing Company. C. J. Cleveland was also made a party defendant to the suit, plaintiff alleging that he (Cleveland) was also asserting claim for the same commission upon the contention that he, instead of plaintiff, was the procuring cause of the sale, and that therefore had earned the commission; that said claim by Cleveland was fictitious and without merit, since his efforts were not the procuring cause of the sale of the lease; and that Smoot was unwilling to pay plaintiff on account of the claim for the same commission by Cleveland. Cleveland filed an answer and plea, in which he sought to recover a commission of 5 per cent. upon allegations that he, under employment by Smoot as broker, had effected the sale of the lease, and that his efforts were the sole procuring cause of the sale. Smoot filed an answer, in which he admitted that he owed a commission of 5 per cent. to either Keener or Cleveland, or both, and offered to pay the same to such one or ones as might be shown to be entitled thereto upon the trial of the case; in other words, he took the position of stakeholder only, and did not resist the suit of either of the claimants.

Upon the trial the court submitted to the jury the claims of both Cleveland and Keener, in each instance instructing the jury, in effect, that a verdict should be returned in favor of the one whose efforts the jury might find were the procuring cause of the sale. After giving those instructions the court further told the jury that, if the efforts of both Cleveland and Keener combined were the procuring cause of the sale, then a verdict should be returned in favor of each for one-half of the commission. Under those instructions, the jury awarded to each claimant one-half of the commission; the jury also found that Smoot was entitled to a fee of $100 as attorney's fee for filing an answer, which amount was claimed by Smoot in his pleading, and that the same should be deducted from the $1,750 owing for commissions before any dividing of the same between the two claimants. From a judgment in accordance with that verdict, Cleveland has prosecuted this appeal.

[1] Error has been assigned to the refusal of Cleveland's request for a peremptory instruction to return a verdict in his favor for the entire commission, amounting to $1,750, and we have reached the conclusion that that assignment should be sustained. The evidence conclusively shows that Smoot never met Broyles nor had any communication whatever with him prior to the time those two were brought together by Cleveland in Rising Star; and the facts recited above with respect to what took place in that meeting in connection with the telegram sent to Smoot on the following day, by the terms of which the proposition of sale by Smoot, submitted by him to Broyles on the day before during the first negotiations which were brought about by Cleveland, conclusively show that Cleveland's efforts were the procuring cause of the sale; and the fact that in the final negotiaions in Comanche Smoot and Broyles agreed to some slight modifications of the terms of the trade already agreed on, and the further fact that Keener assisted in those negotiations could make no difference. It is well settled that after an agent has earned his commission by procuring a purchaser, ready, willing, and able to buy at a price and upon terms satisfactory to the principal, the principal cannot deprive him of compensation so earned by voluntarily modifying the terms of payment or by employing another agent to assist him in the final negotiations. Shelton v. Cain (Tex. Civ. App.) 136 S. W. 1155; Bellis v. Hann & Kendall (Tex. Civ. App.) 157 S. W. 427; Shaw v. Faires (Tex. Civ. App.) 165 S. W. 501; Edwards v. Pike, 49 Tex. Civ. App. 30, 107 S. W. 586.

[2, 3] Prior to the negotiations brought about by Cleveland between Smoot and

Broyles, Keener had been employed to sell capital stock in the American Profit Sharing Company, and he had attempted to sell some of the stock to Smoot. In order to make such a sale, he had recommended the stock to Smoot very highly, and had induced him to believe that an investment in that stock would be desirable and profitable to the investor, but Smoot had not decided to make such a purchase. However, Smoot testified upon the trial that what Keener had theretofore told him about the stock caused him to agree with Broyles in the negotiations at Rising Star to accept $5,000 of the stock in part payment of the lease. Keener, in his efforts to sell the stock to Smoot, did not have in contemplation the sale of the lease. Presumably he had some arrangement with the American Profit Sharing Company for compensation for his services in making a sale of the stock. But the sale of the stock was a separate and distinct transaction from the sale of the lease, and, even though his recommendation of the stock incidentally had some influence with Smoot in making the agreement he did with Broyles at Rising Star to accept $5,000 of the stock in part payment of the lease, yet that incidental result, unexpected and undesigned by Keener at the time he recommended the stock, could not be made the basis of a claim by Keener for the commission in controversy. Of course, Smoot was free to make himself liable for the value of the services rendered by Keener, in addition to his liability to Cleveland, if he saw fit so to do. Perhaps that liability, if any, would be upon a quantum meruit, or for the value of the services so performed by Keener independent of his contract to pay Keener 5 per cent. commission if he alone procured the sale of the lease. The evidence tends to support a possible claim by Keener against Smoot for the value of services upon that theory, and we are of opinion that as between Smoot and Keener the cause should be remanded for another trial if Keener should see fit to urge such a demand. But for the reasons already stated the judgment of the trial court awarding Keener one-half of the commission will be reversed, and judgment in favor of Cleveland will be so reformed as to award him the recovery of the entire commission of $1,750, and denying Smoot any allowance for attorney's fees for filing the answer, since the evidence conclusively shows that Smoot had no reasonable grounds for failing to pay Cleveland the full commission agreed upon, and therefore it would be unjust to Cleveland to deduct from the commission so earned by him the fee of $100 as an allowance to Smoot by way of an attorney's fee for filing an answer in this cause.

Accordingly the judgment of the trial court, allowing Smoot an attorney's fee of $100, and awarding to Keener one-half of the remainder of the commission, is reversed, and judgment is here rendered in favor of Cleveland against Smoot for the entire commission of $1,750, with interest at the rate of 6 per cent. per annum from April 19, 1920, up to the present time, and that Smoot take nothing on his plea for attorney's fee as against Cleveland; but that as between Smoot and Keener the case is remanded to the trial court. The cost of this appeal will be taxed against appellee W. H. Keener.

### On Motion for Rehearing.

Appellee Keener has called our attention to an inaccurate statement in our opinion on original hearing, wherein it was stated, in substance, that prior to the occasion when Cleveland introduced Broyles to Smoot in Rising Star and the terms of the trade were agreed to, Keener had attempted to sell to Smoot some capital stock in the American Profit Sharing Company, but that he did not have in contemplation the sale of the lease in controversy. That statement was inaccurate in this. Prior to that meeting Smoot had listed the lease with Keener, and Keener had suggested to Smoot that Broyles might be induced to purchase the lease, and he and Smoot had gone to Rising Star and had spent two days there in an effort to find Broyles, but had failed to find him. Smoot and Broyles were never brought together until Cleveland introduced them to each other in Rising Star on the occasion when the terms of the trade were agreed to.

Accordingly the original opinion is corrected in the respect noted. However, we fail to perceive how the fact so stated in the correction noted could have any material bearing upon the conclusion we have reached already; and, after a careful consideration of appellee Keener's motion for rehearing, the same is overruled.