ANTHONY v. BALL et al.†

(Court of Civil Appeals of Texas. El Paso. March 28, 1912. On Motion for Rehearing, April 24, 1912.)

1. APPEAL AND ERROR (§ 1064*)—DETERMINATION—REVERSIBLE ERROR.

In trespass to try title to recover school land, which had first been awarded to plaintiff and later to defendant, the parties entered a stipulation to the effect that plaintiff had made an affidavit of settlement and forwarded it to the general land office, but it was not stipulated that it had been forwarded within the required time. The evidence showed that the affidavit was filed within 30 days after the expiration of 90 days from the date of the purchase, but not within 30 days from the date of settlement. Held, that an instruction erroneously charging that, unless plaintiff filed his affidavit of settlement within 30 days after the expiration of 90 days from the award and 30

days after settlement, verdict should be for the plaintiff, was reversible error, because it is presumed that the jury followed the charge and were misled.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

2. PUBLIC LANDS (§ 173*)—TAXES—SCHOOL LANDS—OCCUPANCY.

A purchaser of school lands made a conveyance of the land shortly after the award and then left it, remaining away for over seven months on a more or less unexplained absence. *Held*, that this absence as a matter of law constituted an abandonment, even though the purchaser claimed that the conveyance was not absolute, and that he intended to return.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

On Motion for Rehearing.

3. EVIDENCE (§ 471*)—CONCLUSIONS—INTENT.

Where it was claimed that plaintiff abandoned school lands awarded to him, evidence that he left, intending to return, was admissible, despite objection that it was a conclusion.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

4. APPEAL AND ERROR (§ 1056*)—REVIEW—HARMLESS ERROR.

In trespass to try title to recover school land, where the evidence showed as a matter of law that plaintiff had abandoned the land after an award, the erroneous exclusion of testimony that he intended to return was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193; Dec. Dig. § 1056.*]

5. PUBLIC LANDS (§ 173*)—TAXES—SCHOOL LANDS—CONTESTS—EVIDENCE.

In trespass to try title to school lands which had first been awarded to plaintiff and had then been canceled and awarded to defendant, evidence that a transaction between plaintiff and another party was not an absolute conveyance was admissible on the question of abandonment.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, Reeves County; S. J. Isaacs, Judge.

Trespass to try title by George L. Anthony against J. F. Ball and another. From a judgment for defendants, plaintiff appeals. Affirmed.

McKenzie & Brady and J. W. Parker, all of Pecos, for appellant. Hefner & Hudson, Ross & Gibson, and Hudson & Canon, all of Pecos (Hefner & Hudson, now Hudson & Canon, and Ross & Gibson, now Ross & Hubbard), for appellees.

PETICOLAS, C. J. This was a suit by Geo. L. Anthony in trespass to try title to recover certain school land. Geo. L. Anthony having applied to purchase the land, it was awarded to him, and he settled upon it. Thereafter he and one Johnson entered into an agreement with reference to a sale of the land to Johnson, and, in pursuance thereof, a deed was executed from Anthony to Johnson. The testimony is sufficient, we think, to raise an issue with reference to this deed as to whether it was intended as an absolute conveyance, or whether it was intended by the parties that the deed should be ineffective, unless the sale was approved by the land commissioner of the state of Texas, and Johnson was accepted as purchaser of the land. The testimony, we think, very strongly preponderates in favor of the latter view, but there is sufficient testimony to raise the issue as stated. Shortly after this trade Anthony left the land, and went to East Texas. He was gone seven months and twenty days. After he had been gone about a month, the land commissioner forfeited his purchase of the land for nonoccupancy. As in nearly all instances where the issue of abandonment of school land arises, the testimony in this case is conflicting as to whether Anthony failed to reside on the land within the meaning of the school land laws, and as to whether his absence was merely temporary, and was or not a failure to reside on the land. Afterwards appellee applied to purchase the land. It was awarded to him, and this suit brought by the appellant against the appellee resulted.

[1] The first assignment of error is that the court erred in that portion of his charge in which he stated that if the jury believed that Geo. L. Anthony on or before the expiration of 90 days from the date of the award of said land to him by the Commissioner of the General Land Office was in person and in good faith an actual bona fide settler on said land, and that within 30 days from the date of said settlement, if any, the plaintiff made and filed with the Commissioner of the General Land Office his affidavit of settlement, this plaintiff could recover; the vice complained of in the charge being that the law does not require the purchaser to file his affidavit of settlement within 30 days from the date of the settlement, but only within 30 days after the expiration of 90 days from the date of his purchase, and it is complained that this charge was, in effect, a peremptory instruction, because the undisputed facts were that he had filed it within 30 days after the expiration of the 90 days, but not, as stated in the charge, within 30 days of the date of settlement. To this it is replied by the appellee that there was an agreement between the parties substantially to the effect that Anthony had complied with every prerequisite of purchase except occupancy, and that such agreement makes this error in the charge harmless error. It may be stated in this connection that said agreement was that Anthony made affidavit of such settlement and forwarded it to the General Land Office, but there is no agreement that he filed it within the required time. It is very difficult to determine whether this error in the charge is such as should reverse the case or not. For the appellee it may be said that there was no contention made that plaintiff had

not filed his affidavit of settlement, as required by law; on the other hand, for the appellant it may be said that the jury were told that, before he could recover, he must have shown that he filed it within 30 days of settlement, and the undisputed facts being that he only filed it within 30 days of the 90 days allowed by law, and that he had not complied with the requirement of the charge, it is to be presumed that the jury followed the charge of the court, and were thereby misled.

[2] We conclude that the error was reversible error (see Pullman Co. v. Custer, 140 S. W. 849), in that it was reasonably calculated to have misled the jury, unless on the whole case we should conclude that no verdict could have been rendered except one for the defendant. The only issue in the case which could possibly have required a peremptory instruction for the defendant was the one of plaintiff's abandonment of the property. The testimony of Anthony himself is the strongest that there is in the case which tends to show occupancy.

Anthony testified: "I occupied the cottage myself and have always continued to reside there. That has been my home since I settled there in 1906 up to the present time. I have never had any other home but that home. I have been there continuously since that time until now, unless I was called off by business. I have had no other home. I have been off my land purely on business. When I have anything to do I have to go off the land, as I have no one else to attend to my business. I went East on business. I went East to sell a piece of land I had in Van Zandt county. I was away the first time four to six weeks. I returned. I lived on the land. I went East afterwards when I had a transaction with a man named Johnson. I was away for a while. I could not get back, but it was still my home. My purpose in going East was I wanted to get rid of some land I have there, so I could live here more easy. I was gone something over seven months. My attorney advised me I could go. Had it not been for that, I would not have gone. I did not leave here with any intention of leaving. During my absence my home was on section 44. I have had no other home. I left the 14th or 15th of September, and my land was canceled on 6th of November. I got notice some time after that. I went back to section 44 somewhere about the 1st to 5th of May. That is my home now with the very best of faith, because I have no other home. After the transaction with Johnson, the land remained mine, and I considered it so. I did not consider that I made any transaction with Johnson until it was approved. When I was gone six weeks the first time Terrell, the land commissioner, wrote me to come back. I have made proof of occupancy on my land not long ago, since the trial of this case last time. From September 14th to about May 6th I was away. While

away went to Austin to pay out; found I had been canceled. I was in the land business in a place while I was away. I was trying to sell my own land and other land so I could get back here. I was not a land agent, but had access to some lands I could sell. I clerked for Bush at Grand Saline. I had charge of the business for them a little while. One of them was sick. They did not pay me a salary. I did not make any trades for other people while I was there. I did not sell my own land until afterwards. I was in and out there, in charge of the business for Bush Bros., three or four months, boarded at the hotel, and lived in the country with a friend of mine. I had been down there about a month when I had my trunk sent to me. I had left the trunk when I went away in September. Leaving Grand Saline in March, I went to Gainesville and Terrell. In Gainesville I consummated a trade. Then went to Austin. After I saw Terrell there, I came right on home. I had been to Austin, made my payments and came home. I made a memorandum on the wall of when I came home. Robison at Austin told me to go back and stay on the land; that the Land Department had no right to cancel the land. Then I went up there after so long a time and got my money from Mr. King, $750, at Gainesville. Then I went to Austin, went to see Terrell. He wasn't in; saw Robison. He said: 'You attend to your interest here, and go back to your land.'"

The cases of Bustin v. Robinson (Sup.) 119 S. W. 1140, and Andrus v. Davis, 99 Tex. 303, 89 S. W. 773, seem to be those which most nearly approximate the conditions here present, and in reasoning it seems to us that these cases are to some extent conflicting. In the Andrus v. Davis Case the majority opinion of the Court of Civil Appeals holds that the character of the occupancy required is an actual residence or occupancy, rather than a constructive one, and although it is said that one may be actually residing upon the land and yet occasionally be temporarily absent from the land, under this case, it is not a question of abandonment, but a question of actual rather than constructive occupancy. The Supreme Court in the case cited does not necessarily approve all of the reasoning of the Court of Civil Appeals, for it merely holds that the facts in the case were sufficient to support the finding of the trial court that Bessie Andrus had not occupied the land within the meaning of the school land laws. In the Bustin v. Robinson Case, supra, it is stated by the Supreme Court that to reside on the land does not mean that the actual settler shall at all times be present on the land. It requires only that it be a permanent place of abode. The mere fact of temporary absence does not constitute a failure to reside, and the law is summed up by that case substantially to the effect that each case must turn largely on its

own facts; that even an absence with the intent ultimately to return might be for such purposes, and accompanied with such engagements, as to be held inconsistent with the obligation to improve and occupy in person. It seems to us that it may clearly be seen that there is considerable difference in these two cases as to what are the determinative factors with which to ascertain whether a given absence by an actual settler from his land loses him his rights to purchase or not, in that the Andrus Case makes it a question of actual rather than constructive occupancy, and the Bustin Case turns on intent and abandonment. The question is further complicated in the case at bar because, owing to the erroneous charge above adverted to, we are called upon to determine whether the facts above recited would have sustained a verdict in Anthony's favor, or a finding that he had not abandoned the land, if a jury had so found. It seems clear, however, from all the decisions on this subject that a protracted absence will always constitute a failure to occupy the land within the meaning of the school land laws, unless it is made to appear that such absentee returned to the land as soon as, owing to the exigencies of his absence, he possibly could. We do not think the facts in this case show any attempt by Anthony to return as soon as he could, nor does it appear that he might not have returned very much sooner than he did. The conviction is forced upon one in reading his testimony that he did not intend to return, and that never, until told by Robison to do so, had he any thought of returning to the land, and while, of course, this conviction on our part would not affect the matter if there were any evidence tending to show that Anthony returned as soon as he could, yet it is apparent under the decisions that the longer the absence is continued the more rigorous becomes the necessity of showing facts which indicate that the absence was only temporary, that in good faith there was no intention to abandon, and that the absence was terminated as soon as possible. In this instance Anthony made his attempted sale to Johnson and then left. After he had been gone a month, he sent and got his trunk. While he was away he clerked in a store, and ran, or helped run, another business. He makes no effort to return until he is told by Robison to do so. He says he left to sell his other land, but makes no showing that he could not have remained on this land and at the same time sold the other land. He says that he could not get back, but does not explain why. He makes no showing that he was at any time short of money. He protracts his absence for more than seven months. We are forced to conclude that the particular facts in the instant case would not have supported a verdict for Anthony. Therefore the erroneous charge above adverted to was harmless error.

The court properly submitted to the jury the issue of whether Anthony's deed to Johnson was an absolute one, and correctly told them that they could not consider the forfeiture by the land commissioner.

What has been said removes the materiality of the assignment predicated on the refusal to permit Anthony to testify to intention.

For the reasons indicated, the case is affirmed.

McKENZIE, J., who was of counsel, disqualified, and not sitting.

### On Motion for Rehearing.

PETICOLAS, C. J. In overruling the motion for rehearing, for clarity, we desire to state that we hold that the testimony in this case is such to show as a matter of law an abandonment by Geo. L. Anthony.

[3, 4] This being true, a number of errors which we think were committed become immaterial.

(a) The testimony of Geo. L. Anthony that he intended to return was admissible as against the objection that it was a conclusion, but the testimony as a whole disclosing, as a matter of law, an abandonment, the error becomes immaterial.

[5] (b) The testimony of Leavell, Beauchamp, and Love, which tended to show that the transaction between Anthony and Johnson was not an absolute conveyance, was admissible, but, in the condition of this record, becomes immaterial.

If the verdict in this case had been in favor of Anthony, we are of opinion that we should have been obliged to reverse and render the case for Ball on these facts.