## CERF et al. v. McELROY.

### No. 12159.

Court of Civil Appeals of Texas. Fort Worth. Dec. 21, 1929.

Rehearing Denied Feb. 1, 1930.

Eighth judicial district, by M. D. Cerf, George H. Anderson, Andrew G. Ilseng, and Edgar G. Banta, against John T. McElroy. The plaintiffs alleged in their first amended petition that they were engaged in the business of procuring purchasers for and making sales of mineral lands and oil and gas properties, and that the defendant, John T. McElroy, the owner of certain valuable oil and ranch properties, prior to October 22, 1926, and subsequent to July 1, 1926, authorized them to sell his properties for the sum of $2,000,000 net to him, and orally agreed that, in the event they were sold for a sum in excess of $2,000,000, the plaintiffs should receive all of such excess as compensation for their services in procuring, or causing to be procured, a purchaser for the same.

The plaintiffs further alleged that pursuant to this agreement they, or one of them, did, prior to March 3, 1927, procure a purchaser for the properties of the defendant, namely, the McElroy Ranch Company, a corporation; that thereafter the McElroy Ranch Company, a corporation, purchased the properties of the defendant from him for the sum of $2,500,000, the transaction being consummated by the delivery of a deed or deeds by the defendant to his properties to the McElroy Ranch Company and the payment of the agreed purchase price by the McElroy Ranch Company to him.

The plaintiffs prayed for a recovery against the defendant, McElroy, for the sum of $500,000.

After certain general and special exceptions, which need not be considered on this appeal, the defendant denied generally the allegations of the plaintiffs' petition, and specially pleaded that appellants were partners with T. S. Hogan and his son, Fred T. Hogan, who were the active parties in effecting the sale of the ranch in question, as shown by the sworn pleading of appellants in their suit in the District Court of the United States for the Northern District of Texas, Fort Worth Division, in cause No. 494 in equity; that said partnership was formed for the purpose of purchasing and reselling appellee's property; that it had been judicially determined in cause No. 494 in equity that said partnership relation existed, and that it had been ratified by a contract of settlement between the appellants and said Hogans, by the terms of which appellants received $90,000 in cash from said Hogans for their interest in said partnership, and that, by reason of the existence of said partnership, it was contrary to public policy for appellants to maintain this suit against appellee after having claimed and established said partnership relation between themselves and the said Hogans. Appellee pleaded the original petition and proceedings in said cause No. 494 in equity.

Slay & Simon and M. E. Smith, all of Fort Worth, for appellants.

McLean, Scott & Sayers, of Fort Worth, for appellee.

CONNER, C. J.

This suit was originally filed in the district court of Tarrant county, Tex., Forty-

The cause was submitted to a jury upon special issues, which, together with the jury's answers thereto, were as follows:

"Question One: Did the defendant McElroy agree with the plaintiffs herein, or either of them that the said McElroy would sell to any person procured by them, his ranch, including the stock thereon for the sum of two million dollars net to the said McElroy, and that plaintiffs should have whatever amount that should be paid as consideration for said ranch in excess of said two million dollars? Answer: No.

"If you should answer Question One in the negative, you need not answer any of the following questions, but if you have answered same in the affirmative, then you will answer all of the following questions:

"Question Two: Was T. S. Hogan caused or induced to either purchase or procure a purchaser for the McElroy ranch by or through any acts or efforts of the plaintiffs or either of them? Answer ———.

"Question Three: Prior to or at the time of the payment of the ninety thousand dollars to the plaintiffs herein did the plaintiffs and T. S. Hogan intend and understand that such payment and acceptance of said sum should constitute and operate as a discharge and release of any and all claims, if any they had, of plaintiffs against defendant arising out of the purchase or sale of the said ranch of the said McElroy? Answer ———.

"You are the exclusive judges of the credibility of the witnesses, the weight to be given to the evidence and of the facts proved."

The defendant, McElroy, testified very explicitly that he had never listed his ranch property with the plaintiffs for sale at any time or in any manner, and had not, at any time or in any way, agreed with them, as alleged in their petition, to give them as a commission all in excess of $2,000,000 for which his ranch could be sold, and there is no contention on this appeal that the evidence is insufficient to support the verdict of the jury in its answer to special issue No. 1. The appeal, however, is predicated upon objections to the evidence introduced relating to the suit instituted by the appellants in the United States District Court against T. S. Hogan. The evidence to which objection is made is: First, the petition of Geo. H. Anderson, Andrew G. Ilseng, M. D. Cerf, and E. G. Banta, complaining of T. S. Hogan and Fred T. Hogan, alleged to be nonresidents of the state of Texas, but residents of the State of Colorado; alleging that "sometime during the month of September or October, 1926, complainants and respondents entered into a contract, by the terms of which, the said complainants and the respondents were to co-operate and act together in the handling, acquiring and sale of certain properties belonging to one J. T. McElroy, said properties consisting of certain lands and their appurtenances, oil and gas leases, oil and gas royalties and rights, and certain grass and surface leases on said lands, and also a large amount of personal property, consisting of all cattle and farm and ranch implements, tools and other personal property; that all of said properties were owned and controlled by the said J. T. McElroy and were in the exclusive possession of the said McElroy and his agents."

The petition further alleged, in substance, that the complainants, as the plaintiffs in that suit were styled, were in touch with McElroy and in communication with him in regard to the sale of the property referred to, and had been for some time prior to the agreement appearing in the following further quotation from the petition, to wit:

"That during the months of September and October, 1926, complainants communicated to respondents, the fact that said properties of the said McElroy were for sale, and thereupon the complainants and the respondents agreed that they, both complainants and respondents, would work together and co-operate together in the handling, acquiring and sale of said properties, and that all commissions, emoluments and profits of any kind or character that were obtained by them, or which should accrue to them, or that any of said parties, either complainants or respondents, were entitled to or should become entitled to, or come in possession of; or that any or either of said parties should acquire in any manner whatsoever, or which should accrue to them or any of them, by virtue of the handling, acquiring and sale of said properties of the said McElroy, whether the said properties were handled or sold by or through the efforts of all of said parties, after the date of said conference and agreement between complainants and respondents, and that according to the terms of said agreement, all commission, profits and emoluments of whatsoever kind or character should and would be divided between and among said parties, to said contract, the complainants and the respondents herein, in the following manner, towit: That the said complainants should receive 75% of the same and the respondents 25% of the same. That at the time of, and prior to, the making of the agreement between complainants and respondents, it was discussed and understood by and between complainants that the transaction was one in which large profits could be made, because of the great value of the property involved, and that complainants informed respondents that the said McElroy had expressed his willingness to sell, and had discussed the sale of said properties at a price of from Two Million to Two and one-half Million Dollars, and that complainants and respondents knew, understood and agreed that the transaction was one in which large profits and much money could be made, and that the oil and gas royalty alone upon said lands

was of great value, and that the complainants and respondents expected to and understood that they would probably realize a large profit in the transaction.

"That it was agreed between complainants and respondents, that they should act as partners from and after said time, in said transaction, and that said transaction was in fact a partnership transaction between complainants and respondents from the time of said agreement, up to the final consummation of any deal that might be made, whereby said properties of the said McElroy were sold to any persons, and that said partnership agreement is still in full force and effect and that all of such profits, commissions and emoluments, by the terms of said partnership agreement, are to be divided between complainants and respondents, in the proportion hereinabove set forth."

It was further substantially alleged that it was agreed that the complainants should conduct the negotiations with McElroy, and the Hogans should communicate with prospective purchasers; that the respondents fraudulently planned and devised a scheme to overreach and defraud the complainants, and secure all of the properties for themselves, and for that purpose T. S. Hogan approached McElroy, concealing from him the fact that the above-mentioned agreement had been made between the complainants and respondents, and on about October 22, 1926, entered into a contract in writing with McElroy, according to the terms of which T. S. Hogan agreed to purchase and McElroy agreed to sell, the consideration to be paid by Hogan being the sum of $2,500,000, McElroy agreeing to convey the legal title to such persons as Hogan should designate; that Hogan had made agreements and contracts for the resale of said property at a large profit. The complainants accordingly prayed for an accounting and that there be set aside to them 75 per cent. of such profits, and also prayed for issuance of an injunction against the respondents and an appointment of a receiver, etc.

In behalf of appellee, further proceedings in the federal court were offered, showing that the case between appellants and Hogan and son had been compromised and settled. The appellants in that case, at the time, executed an instrument which, so far as necessary to quote, recites that each of them, individually, "in consideration of the sum of $90,000, cash in hand paid by said T. S. Hogan, on this date, receipt whereof is hereby acknowledged, do hereby release and discharge the said T. S. Hogan, and his son, Fred T. Hogan, as well as each and all of their associates, and all other persons whomsoever, from any claim, demand, right, or cause of action of any and every kind whatsoever arising or in any manner occasioned by the purchase or sale of the aforesaid properties."

Hogan was also permitted to testify, over the objection of appellants, to the effect that it was his understanding and intention, upon the acceptance of the $90,000, paid by him to the appellants, that McElroy, the defendant in this suit, was to be released from any claim the plaintiffs might have against him.

The proceedings in the federal court, as well as the testimony of T. S. Hogan, were objected to as irrelevant, immaterial, incompetent, prejudicial, and self-serving, and error is here assigned to the action of the court in overruling the objections.

 We think the rulings of the court were correct. The appellee presented two issues. The first was that he at no time employed appellants as brokers for the sale of his ranch, and denied that he had ever made the agreement upon which the appellants' suit was founded. In the alternative, he also pleaded that at all events he had been released and discharged from any obligation to the appellants by reason of the proceedings in the federal court, which he fully pleaded. While inconsistent, it was permissible under our statutes to plead both. Upon establishing either one, appellee was entitled to the judgment. The evidence, therefore, relating to the alleged discharge, if relevant and competent, was certainly admissible if tendered to support the last one of the issues pleaded in bar by the appellee.

Mr. Anderson, one of the appellants, testified:

"Yes, we got $90,000. I do not know who paid the $90,000, the payment was made to our attorney. Yes, it is true I signed the contract of settlement. * * * Yes, I knew the contents of this instrument when I signed it and I discussed it with the different persons who did sign it before I signed it. I discussed it with our attorneys."

David Trammell testified that at the time of the execution of the release his firm was representing the purchasers of the McElroy ranch as well as Mr. Hogan, and that it was an important deal, and the settlement had to be concluded in order for the deal to go through; that he did not remember that Mr. McElroy's name came up; that "the intention of the contract, so far as I had in mind, was to settle everything that affected Mr. Hogan or the purchasers of the McElroy ranch. As I stated, I had no knowledge of any claim against Mr. McElroy, and, therefore, could not very well have intended any release as to him, but as I said, this contract, as I wrote it, was pretty broad, and it was intended to release everything that might affect the deal. * * *"

The witness Hogan testified: "I paid $90,-000 for a full and complete settlement of every claim of every kind and character that plaintiffs had against me, or anyone else, arising out of the transaction. * * * I told Mr. Trammell at the time, that in mak-

ing that settlement, I wanted to settle for any claims that might hereinafter be made by these men against Mr. McElroy; I told him that many times in his office and elsewhere. * * * Mr. Simon was present, when I told him that, and Mr. Hancock was also present. * * * I know that the matter of McElroy's release was discussed because the question came up about McElroy's objecting, or purchasers objecting, if any of them were left out. * * * I told them I would not sign any agreement unless everybody connected with it was released. Mr. McElroy was discussed there; I suppose his name was mentioned 20 or 30 times. * * * McElroy had not yet finished his complete title to the property, and could have backed out of the deal. I did not know at that time that there was any claim against McElroy; I did not know that they had the nerve to bring suit against me and him too. The reason why I wanted Mr. McElroy included in the lease was that he was anxious to be relieved from his contract with him; and was not anxious to complete the sale of the property; and I feared that unless there was a complete release of any claim, that I was in a position that the money was up by the purchasers, and yet the transaction was not completed in that Mr. McElroy or the purchaser might have withdrawn from it, and Mr. McElroy showed a disposition all the time to withdraw from the deal unless the exact letter of my contract was fulfilled. I did not want the $145,-000 that I had spent in selling this property, $110,000 of it as the option money, and the rest in expense, to be forfeited by McElroy's failure to deliver the deeds, and that is why I wanted a completed transaction where everybody would be through when it was done. That was my reason for wanting McElroy released."

The appellants Banta, Cerf, Anderson, and Ilseng testified to the effect that they did not intend to release McElroy.

The release is, as to persons not named, general in terms. In terms it purports to discharge all persons of obligation to appellants "from any claim, demand, debt, right or cause of action of any and every kind whatsoever arising or in any manner occasioned by the purchase or sale of the aforesaid property"; the property referred to being the McElroy ranch. To identify the individual persons unnamed that were within the legal effect of the general terms of the release as actually written, it was only necessary to establish by proof the names of all those who were associates of the Hogans in the purchase and sale of the ranch and those against whom the appellants "had any claim, demand, debt, or right or cause of action, arising or in any manner occasioned by the purchase or sale in controversy."

The question, then, is one of identification merely, as may be illustrated by the case of Warren v. Parlin-Orendorff Implement Co. (Tex. Civ. App.) 207 S. W. 586, where it was held that parole evidence was admissible to show who were creditors of sellers where the contract provided that a note given as part of the purchase price for goods should be applied by the sellers in payment of all claims against the goods, or again as in cases of assignments for the benefit of creditors. In such cases it is not necessary to the legal effect of the assignment that all individual creditors be named therein; it being permissible to identify the creditors entitled to the benefit of the assignment by parole evidence. It was therefore evidently proper for the court to permit appellee to bring himself within the scope or legal effect of the written release by competent evidence. Indeed, it is undisputed that the claim of the indebtedness now claimed by appellants and upon which their suit is founded "arises," or is "occasioned," by the purchase and sale under consideration. The objection to the expression of Hogan's understanding and intent in executing the instrument, therefore, is wholly unobjectionable, or at least certainly not prejudicial, inasmuch as it is in accord with the legal effect of the terms of the release when applied to the undisputed facts in the case. If it be said that the lease is ambiguous, which we do not think, then, in line with numerous authorities, the understanding and intent with which an ambiguous instrument is executed is competent as a fact proper for consideration. See Pitt v. Elser, 7 Tex. Civ. App. 47, 32 S. W. 146; Ry. Co. v. Newburn (Tex. Civ. App.) 58 S. W. 542; Anthony v. Ball (Tex. Civ. App.) 146 S. W. 612; Browning v. Currie (Tex. Civ. App.) 140 S. W. 479; Mayers v. McNeese (Tex Civ. App.) 71 S. W. 68. In the case last cited, Chief Justice Rainey, of the Dallas Court of Civil Appeals, said:

"We are of the opinion that the court erred in not permitting the appellant to testify as to his intention about waiving the lien. While the intention of a party will not necessarily control, especially where the facts show a legal waiver, yet it sometimes forms an important element in determining whether or not there was a waiver."

See, also, Walker v. McDonald, 49 Tex. 458; Ry. Co. v. Darr (Tex. Civ. App.) 93 S. W. 166; Riggins v. Post (Tex. Civ. App.) 172 S. W. 210; Plummer v. Simms (Tex. Civ. App.) 177 S. W. 1037.

However, we have perhaps devoted too much attention to the question presented by appellants' assignments of error and propositions thereunder, for, regardless of the questions so presented and what we have said in disposing of them, there is another view of the proceedings below which leads

to an affirmance of the judgment in appellee's favor.

■ It is to be noted, as already stated, that appellee interposed two defenses to the claim of appellants. To repeat, he first generally and in specific terms denied that he ever listed his ranch properties with appellants for sale or contracted with them or either of them as they alleged in their petition; second, in the alternative, that, if it should be held otherwise, the claim of the appellants had been released and discharged by the proceedings in the federal court which were duly pleaded. It is to be further noted that the first defenses arising under appellee's denial were submitted to the jury in terms and form not assailed in this court. In the suit in the federal court, the plaintiffs clearly assumed the position of partners and copurchasers with Hogan. This may be emphasized by an answer of the appellant M. D. Cerf in a deposition relating to the contract between appellants and Hogan. He was asked on cross-examination:

Question: "Between you and your associates on the one hand, and McElroy on the other, it was your intent and purpose to buy the property just as cheaply from McElroy as you could, and to sell it to a purchaser for just as high a price as you could, isn't that correct." Answer: Yes, sir."

In the present suit they placed themselves as clearly in the position of brokers or agents of the defendant McElroy to procure a purchaser. The two positions are wholly inconsistent. The plaintiffs are thus placed in the position of the man in the old illustration who attempted to ride at the same time two horses going in opposite directions. It cannot be done. As held in an opinion by Judge Wheeler in the case of Shannon v. Marmaduke, 14 Tex. 217–218, it is well settled as a general rule that a person cannot act as agent for another to sell and become himself the buyer. To the same effect is the decision in the case of McMahan v. Alexander, 38 Tex. 136.

■ We are accordingly of the opinion that the plaintiffs' petition in the federal court, the receipt of $90,000, and other evidence relating to the suit against Hogan in the federal court were relevant and admissible as tending to support appellee's defense that appellants at no time had been employed by him to procure a purchaser of his ranch, or promised to give them all over $2,000,000 for which the ranch could be sold.

This was the main issue in the case. It was submitted in a form not assigned as erroneous, nor is the verdict of the jury in favor of appellee thereon questioned as unsupported by the evidence, in view of all which appellants' assignments of error and propositions upon which we are called to consider are immaterial. Indeed, the court's

charge in effect withdrew the issue of appellee's release from the jury. The instruction was that, in event the jury answered issue No. 1 to the effect that appellee did not agree to a commission, as the appellants alleged, the following issues, relating to appellee's alternative plea of discharge, should not be considered. There is nothing in the evidence upon which the jury's answer to issue No. 1 is evidently founded that will justify the inference that, while appellee made no express agreement to pay a commission, yet he did, as appellants allege in an alternative plea, list his ranch with them for sale, and hence was liable for the usual and customary commissions in such cases. In other words, the evidence credited by the jury in considering their answer to issue No. 1 is the same and equally as convincing in its negation of appellants' alternative plea.

But it is insisted that the appellee was not a party to the suit in the federal court, and that therefore the allegations of the appellants' petition therein and the proceedings resulting therefrom were res inter alios acta and hearsay as to them. The petition in the federal court was duly verified by Mr. Cerf, one of the alleged partners in that case and one of the plaintiffs in this case. In Jones, Blue Book on Evidence, vol. 2, § 272 et seq., it is said that:

"When parties allege matters of fact in their pleadings, these pleadings may be offered in evidence against such parties as admissions of the facts so alleged."

Numerous decisions are cited in a note in support of the quotation made, among which are the following Texas decisions, to wit: Merriman v. Blalack, 56 Tex. Civ. App. 594, 121 S. W. 552; Ry. Co. v. Mulliken, 10 Tex. Civ. App. 663, 32 S. W. 152; Bolt v. State Savings Bank (Tex. Civ. App.) 145 S. W. 707. In Barrett v. Featherstone, 89 Tex. 567, 35 S. W. 11, 36 S. W. 245, our Supreme Court said, quoting from the headnote, that:

"Pleadings prepared and filed by a party though superseded by amendment, may be introduced in evidence against him as admissions. The reason of the rule applies with peculiar force to pleadings which are required by the law to be and are verified by affidavit."

See, also, Burleson v. Goodman, 32 Tex. 229; Seligmann v. L. Greif & Bro. (Tex. Civ. App.) 109 S. W. 214.

Accordingly, without further discussion, we conclude that the court committed no error in admitting appellants' petition in the federal court and the evidence relating thereto; and that hence all assignments of error and propositions thereunder urged by appellants should be overruled and the judgment affirmed.