## JACKSON v. THOMPSON et al.
### No. 4270.

Court of Civil Appeals of Texas. Amarillo. Sept. 24, 1934.

Rehearing Denied Oct. 22, 1934.

G. E. Hamilton, of Matador, for appellant.

McWhorter & Howard, of Lubbock, for appellees.

HALL, Chief Justice.

J. M. Jackson owned 2,702 acres of land in Bailey county, together with about 232 cattle located on said land. There was an indebtedness of approximately $20,000 against the land, and $3,750 against the cattle. Mrs. Lucy J. Webb of Palo Pinto county owned what was known as the Fairfield Inn and a vacant lot adjacent thereto in Mineral Wells, together with the hotel furniture situated in the building. There was an indebtedness against this property of $12,500. On the 16th day of February, 1933, Jackson and Mrs. Webb (who was represented by her husband, Sidney Webb) entered into a contract whereby the

parties were to exchange their respective properties. The material terms of the written contract are that each party assumed the 1933 taxes on the property they were securing, and each was to furnish to the other "a good and merchantable title with a good abstract." It was further stipulated that the trade should be closed within 30 days. That if any flaw was found in the title shown in either abstract, the owner should have a reasonable time to cure the same. That each party should have possession on March 1, 1933. That the insurance on the hotel property should be transferred to Jackson, and Mrs. Webb would get all of the feed then on Jackson's land and owned by him. The contract recited: "This deal is made by Western Land Company and each party agrees to pay the said land company a commission of 2½% each for their services." The exchange was never consummated and J. W. Thompson and Ed Terrell, alleged to be real estate brokers, instituted this suit against Jackson and Mrs. Webb (joining her husband, Sidney Webb, as a defendant) to recover $2,000 alleged to be due them as commission for bringing about the exchange. They prayed for judgment for $1,000 against each of the defendants.

Webb and wife defaulted.

Jackson answered that the plaintiffs, acting as the agents of Mrs. Webb, solicited him to enter into an exchange contract with her, representing that she was ready and would make a quick deal on the exchange. That she would convey him her property clear of all incumbrances except a certain loan in the sum of $12,500, which would be extended for five years, and which he agreed to assume. That she would assume the debts and delinquent taxes against his property. That the contract as written did not express all the terms of the agreement as finally made, in that plaintiffs, on the morning following the execution of the written contract, verbally agreed with Jackson and Webb to change the stipulation with reference to the commissions due plaintiff "to a flat sum of $250.00 each party was to pay," which change was made before the contract was in any manner performed. That the contract as written was ambiguous and uncertain, and the change was made to relieve it of such uncertainty. That by reason of such change, Jackson alleged he could be held liable for only $250, if anything at all. He further specially denied any liability.

Answering further, he said that plaintiffs, as agents for Mrs. Webb, misled him into executing the contract by falsely representing that her hotel property was clear of incum-brances, except the sum he agreed to assume. That he afterwards ascertained that taxes for three or four years due the state, county, city, and public schools were delinquent, amounting to about $4,000, and that federal income taxes amounting to the sum of $4,771, secured by a lien, were also delinquent. That he waited three months for the Webbs to pay said taxes and release such liens, and made several trips to Mineral Wells endeavoring to close the trade, which he was ready, able, and willing to close, but that said taxes were never paid, and he called the trade off on the 15th day of June, 1933, after having allowed her a reasonable time in which to comply with the contract. That it was not contemplated by him or plaintiffs that he would owe any commission on the deal unless the trade went through, and that by reason of their principal failing to comply with her part of the contract, which plaintiffs made and wrote for her, the exchange was never consummated; wherefore he was not liable. He prayed in the alternative that, if the court should find him to be liable in any sum, judgment against him be limited to $250.

The plaintiffs filed a supplemental petition alleging that they brought the parties together and procured the execution of a binding contract between them, and they were therefore entitled to their commissions; that there was no consideration paid for the novation of the contract reducing their commissions, and the agreement was therefore void. They prayed in the alternative for a judgment against Jackson for $250 if the court should find that the novation of the contract was valid.

Jackson by supplemental answer again alleged that it was agreed and understood that he was not to pay any commission in the event the exchange was not finally consummated.

The case was tried to the court without a jury and resulted in a judgment for plaintiffs against each of the defendants Jackson and Mrs. Webb in the sum of $250, with interest from March 1, 1933, at 6 per cent. Jackson alone has appealed.

■ The first proposition relied on is that because the exchange contract itself and the undisputed evidence of both parties show that it was the intention and understanding of all parties that no commission was to be paid appellees by appellant until the exchange was finally effected, and since the exchange was never completed because of the failure of Mrs. Webb to comply with the contract, the judgment of the court is not supported by the evidence.

This proposition must be sustained. The contract binds each party to furnish an abstract showing a good and merchantable title. The evidence is undisputed that federal, state, city, and school taxes, in the sum of approximately $8,700 against Mrs. Webb's property, were due and unpaid, and that after approximately three months she had failed and refused to comply with that term of her contract. The amount due the United States government was a valid tax and lien against the property. Staley v. Vaughn (Tex. Civ. App.) 50 S.W.(2d) 907. An abstract which fails to show that all taxes have been paid does not comply with the requirements of a contract providing for an abstract showing a good and merchantable title. Shamrock Oil & Gas Co. v. Williams (Tex. Civ. App.) 63 S.W.(2d) 570; Crutcher v. Aiken (Tex. Civ. App.) 252 S. W. 844.

██ In support of his allegation that the agreement of the parties was to the effect that no commission should be paid to plaintiffs until the deal was consummated, Jackson introduced in evidence a letter from plaintiff Thompson, dated June 28, 1933, in which he stated: "Now, Terrell has gone and employed Howard, McQuirter & Levens to sue both of you for the full commission and wants me to join him in the suit. I told him if the title was all right and then either of you refused to close, that I would join in the suit. * * * I realize that we have performed our duty and are entitled to the commission from some source, but if you was ready and tried to close up and he [Webb] would not comply with the contract, in that case you are not to blame."

While Terrell was upon the stand he admitted that he told Jackson when the trade was closed not to pay any of the commission to Thompson. He contended that Thompson had collected more than his share of commissions and wanted this commission paid to him. When Thompson was upon the stand he testified: That the next morning after the contract was signed Webb and Jackson were quarreling about the commission on the deal; that they talked to his partner Terrell and Jackson said they wanted to pay $250 each and Webb sided with him; that he and Terrell went into the garage and talked it over and agreed to the payment of that amount; that they did not say when they would pay it. The court then inquired: "Did you ask them for anything at that time?" to which Thompson replied: "No, sir, we always showed the client the courtesy of trying to close up the deal." The court further inquired: "Was it your idea the money was to be paid when the deal was closed?" He replied: "Yes, sir, but I figured we would get our money in thirty days." Jackson testified it was his understanding that he would not owe any part of the commission unless the trade was completed.

We think the record shows that the parties understood that no commission would be due until the exchange was consummated.

As stated, the writing was modified by the verbal stipulation that each party would pay plaintiffs for their services in bringing about such exchange of property between defendants. If the exchange had been completed, plaintiffs, of course, would have been entitled to their commission. But they did not bring about an exchange of property. "To bring about" means to procure and implies completion. Miller v. Eldridge (Tex. Civ. App.) 286 S. W. 999; Shaw v. Threadgill, 53 Tex. Civ. App. 254, 115 S. W. 671.

██ The appellees' counter proposition is that having negotiated a written, enforceable contract between the parties, they have sufficiently performed their duties and are entitled to recover the commission agreed upon. The Webbs might have enforced specific performance of the contract, but it was not shown that Jackson could have done so. The Webbs had not paid the taxes, nor was it alleged or shown that they were solvent. Jackson made several expensive trips to Mineral Wells in an effort to effect the exchange, and because of Mrs. Webb's failure to comply with the terms of the contract it was never closed. It cannot be questioned that three months is a reasonable time in which she might have paid the taxes and cleared the title to her property. Failing in this, Jackson had the right to end the negotiations and declare the contract at an end. Jackson could not be required to convey his property to Mrs. Webb until she was in a position to make a good and merchantable title. Until she had discharged the incumbrances, she was not ready to complete the exchange. So it appears from the record that plaintiffs have not succeeded in closing the deal, nor have they been instrumental in bringing about the execution of an enforceable contract, and they are not entitled to recover against Jackson.

██ In awarding them a recovery of $250 against each of the defendants, the court has evidently based his judgment upon the terms of the written contract as modified by the oral agreement, and since under the oral agreement plaintiffs were required to bring about an actual exchange of the properties between the defendants or to effect the execution of a

binding contract between them, the judgment as to Jackson is not supported by the testimony. Mrs. Webb's failure to comply with the contract renders her liable (Shaw v. Faires (Tex. Civ. App.) 165 S. W. 501; Evans v. Gray, 38 Tex. Civ. App. 442, 86 S. W. 375), and the judgment as to the Webbs is therefore affirmed. In so far as the court decreed a recovery against Jackson, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

Appellees advance the proposition that because they negotiated a binding and enforceable written contract entered into between appellant and Webb for the exchange of their respective properties, they were entitled to recover the commission from appellant even though the Webbs defaulted and the title to their property was defective. They advance the further proposition that because they were employed by appellant and Webb to negotiate an exchange, and because the undisputed evidence shows that the parties entered into a written contract of exchange, they were entitled to recover their commission, notwithstanding there was no consummation of the deal. They cite Francis v. Foster, 113 Tex. 521, 260 S. W. 1023, in which the Commission of Appeals, through Chapman, Justice, quotes from 9 C. J. 631, as follows: "If the principal and the customer found by the broker enter into a valid contract, and the broker acts in good faith, the broker is not deprived of his right to a commission by the fact that the customer fails or.is unable to carry out the contract, such as a contract of purchase or a contract of exchange."

That case has no application to the instant case, because it appears from the record that the commission was not due until the exchange of their respective properties had been made by the parties. Or else this case is one in which the minds of the parties never met. In either event the appellees would not be entitled to recover. In their original petition the appellees alleged that on or about the first day of January, 1933, Jackson listed with them for exchange or sale 2,702 acres of land in Bailey county, Tex., together with some live stock described in the pleading, and they further allege that thereafter through a series of negotiations they effected an exchange of property with the Webbs on terms agreeable to each of the parties. This allegation is not supported anywhere in the record. No exchange was ever effected, nor were the terms of the proposed exchange ever complied with. It appears that J. W. Thompson and Ed Terrell were conducting a real estate brokerage

business under the firm name of Western Land Company, but that Thompson was the active member of the firm in endeavoring to effect this exchange, and that Terrell had very little, if anything, to do with it. In fact, he does not appear in the transaction until the contract was written and signed. It is conceded that Thompson wrote the contract and conducted the negotiations leading up to its execution, and that Terrell does not appear in the picture until some time thereafter. On January 6th Thompson wrote Jackson, 40 days before the execution of the contract, that he had a good brick hotel in Mineral Wells which had 41 rooms with an indebtedness of $12,500, bearing 8 per cent. interest, against it. He failed to mention the federal, state, county, city, and school taxes, all of which were unpaid and secured by tax lien upon the property to the extent of more than $8,000. June 28, 1933, Thompson again wrote the appellant, telling him that Terrell had employed attorneys to sue the Webbs and Jackson for the full commission, and wanted Thompson to join him in the suit. With reference to this Thompson wrote: "I told him if the title was all right and then either of you refused to close, that I would join in the suit. * * * I realize that we have performed our duty and are entitled to the commission from some source, but if you was ready and tried to close up and he would not comply with the contract, in that case you are not to blame, so please let's get together and try to settle it without any court action," etc.

While Thompson was upon the witness stand and had testified that Webb and Jackson had agreed to pay each $250, he was asked:

"Did they pay it? A. No.

"Did they give you anything at all? A. No, sir, not at that time.

"Or since? A. No, sir.

"The Court: Did you ask them for anything at that time? A. No, sir, we always showed the client the courtesy of trying to close up the deal.

"Was it your idea the money was to be paid when the deal was closed? A. Yes, sir, but I figured we would get our money in thirty days."

■■ The appellees introduced paragraph 8 of Jackson's answer, filed in a prior suit, wherein Webb sought to enjoin him from moving cattle off of his land, in which Jackson alleges that Mrs. Webb, by her husband as agent, and the brokers discovered that the written contract provided that each of the

parties thereto "were to pay 2½% to the plaintiffs as commission for procuring the exchange of such properties." This is followed by the further allegation that the contract in that particular was uncertain, and thereafter "it was verbally agreed between the plaintiffs on one hand and defendant and Sidney Webb on the other, that the amount of the commission would be fixed at $250.00," that each of the parties to the contract would pay plaintiffs for their services in bringing about such exchange of properties between the defendants. This pleading, being filed in a former suit between the same parties, was admissible in evidence. Cerf v. McElroy (Tex. Civ. App.) 25 S.W.(2d) 950; Buzard v. McAnulty, 77 Tex. 438, 14 S. W. 138. Exactly why appellees introduced it is not clear, but since they have made it a part of their testimony it tends to show Jackson's understanding of the written and verbal contracts. It is said that the construction placed by a person on his own language in drawing a contract constitutes the highest evidence of his intention. Neblett v. Armstrong (Tex. Com. App.) 26 S.W.(2d) 166, 75 A. L. R. 577. When Thompson wrote Jackson that if the latter was ready to close the deal and Webb would not comply with the contract, Jackson would not be to blame, and when he further, in response to the court's question, "Was it your idea that the money was to be paid when the deal was closed?" answered in the affirmative, is a clear construction by the writer of the contract of what his intention was, and when the contract is ambiguous upon that point, as in this case, the court should accept his construction. In fact, the practical construction given by the parties to a contract has great weight with the court. The contention in this case by the appellees is that their compensation was due when the written contract was signed and yet they waited four months before they made any demand. Thompson had previously written Jackson that he believed he could make a quick deal between the parties. Jackson testified without contradiction that Terrell told him while the deal was still pending not to pay Thompson any part of the commission "when the trade should be closed up," claiming that Thompson had beat him out of some money or share of former commissions. Jackson further testified that when Terrell told him not to pay Thompson any part of the commission when the trade should be closed up, that he, Jackson, replied, "I do not figure that I owe anything yet," and Terrell did not express a contrary view. It is true that Jackson was unable to say what particular state-

ment from either of the appellees led him to believe that no commission would be due until the exchange had been actually effected, but he does state positively that from all that was said he gathered that idea and had that impression.

In our opinion the testimony even of the appellees preponderates in favor of Jackson upon the issue of when the commission was to be paid. If we are mistaken in this, then the record shows that the minds of the parties never met upon this material term of the contract, and in either event the appellees would not be entitled to recover against Jackson. 10 Tex. Jur. 27–30.

The case has not been fully developed, and the judgment is not sustained by the testimony.

Motion overruled.