## O'MEARA v. SAUNDERS.

### No. 11639.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 20, 1946.

Rehearing Denied Jan. 15, 1947.

Second Rehearing Denied Feb. 19, 1947.

Gordon Gibson, of Laredo, for appellant.

Aaron Sturgeon and B. S. Via, both of Pampa, and B. L. Jeffrey, of Carrizo Springs, for appellee.

NORVELL, Justice.

This is an appeal from a money judgment in the principal sum of $7,000 rendered by the district court in favor of plaintiff, J. M. Saunders, and against defendant, E. L. O'Meara. Plaintiff's suit was for the return of earnest money deposited with a land purchase contract.

The trial court held as a matter of law that O'Meara, the seller, had not complied with his agreement to furnish a good and marketable title to the property, discharged the jury and rendered judgment for Saunders. O'Meara has appealed.

Appellee's pleaded theory was that appellant could not and had not, prior to the time of trial, delivered or tendered to appellee a marketable title to the property. While there may be several defenses to a claim such as that asserted by appellee, the contention urged by appellant in his pleadings as a defense and in support of his prayer for affirmative relief by way of specific performance, was that appellant's title was marketable and "that on June 2, 1945, and all times since (appellant), has been willing and ready to convey" a marketable title to the property. Under the pleadings the only judgment which could have been rendered was one for the appellant for specific performance or one for the appellee for the return of the earnest money, depending upon the determination of the issue of whether or not the title of appellant was marketable.

In the judgment the trial judge set out some eleven paragraphs of findings and conclusions, which in his opinion were supported by the undisputed evidence.

For the purposes of this opinion, it is not necessary to set out all of the findings and conclusions contained in the judgment. The following will suffice:

"(a) That the plaintiff, J. M. Saunders, and E. L. O'Meara, the defendant, entered into a written contract dated October 30, 1944, for the sale and purchase of approximately sixteen hundred acres of land as involved in this suit.

"(b) That under the terms of said written contract, which had been introduced in evidence herein, the defendant, E. L. O'Meara, was required to deliver abstracts of title covering said property to the plaintiff and that the defendant, E. L. O'Meara, was required to furnish to the plaintiff, J. M. Saunders, good and merchantable title to said property.

"(c) That under the terms of said written contract the plaintiff, J. M. Saunders, was required to deliver to the defendant, E. L. O'Meara, the sum of seven thousand dollars, which the plaintiff did deliver to the defendant on October 30, 1944.

"(d) That the title to the land involved in this suit is not a good and merchantable title as required by the contract and contemplated by the parties.

"(e) That said lands are encumbered by and with a tax lien due the State of Texas, the County of Dimmit and the Carrizo Springs Independent School District No. 1, in the amount of $2,148.07, which said amount is due and unpaid and by law secured by a lien upon said property.

"(f) That the lands involved herein are also encumbered by unsatisfied notes, which are secured by a lien upon said land, which said notes and liens are now owned and held by the Winter Garden Production Credit Association of Crystal City, Texas, the first note being in the principal amount of $17,811.62, the second in the principal amount of $1,650.00, and the third note in the principal amount of $2,000.00."

The contract between the parties reads in part as follows:

"3. Seller will have prepared abstracts of title to all of said above described lands as promptly as the local abstract company in Dimmit County can compile such abstracts, and will deliver such abstracts to the buyer for examination, and said buyer will have a reasonable time in which to have such abstracts examined, and will furnish to seller, a copy of the opinion to seller within a reasonable time, pointing out any objections to such title, and seller shall have a reasonable time in which to have defects cured. The title which seller agrees to furnish buyer shall be a good merchantable title. In case buyer does not furnish seller with a copy of objections to the title within a reasonable time, then it is to be

assumed that such title is accepted as it is. All liens, and any taxes which might appear unpaid shall be paid by seller. Taxes shall be prorated for the current year as of date of delivery of deed. When such title has been made merchantable, or is acceptable by seller, buyer will accept and seller will furnish a good and sufficient deed with general clauses of warranty, upon the terms herein set forth.

"4. The sum of $7,000.00, which has been paid herewith shall be the cash consideration, and the balance of the total consideration shall be evidenced by six (6) series vendor's lien notes, in equal amounts, for the balance of the consideration, payable one, two, three, four, five and six years after date, respectively, and will be made payable on or before, and shall bear 5% annual interest, such interest payable annually, said notes to be Texas Standard series, vendor's lien notes, containing the usual acceleration clause, and the usual 10% attorney's fee clause, and to be secured by the vendor's lien on said land, and additionally secured by a Deed of Trust, for the benefit of seller and shall carry the usual tax clause, and shall provide that the improvements are to be insured against fire and windstorm with loss payable to seller.

"5. In case of the refusal of buyer to carry out his part of this deal, the $7,000.00 herewith paid may be considered by the seller, either as a forfeit, or at seller's option, may be considered strictly as a part of the purchase money, and specific performance enforced, and in case seller refuses to carry out his part of this deal, buyer may proceed in the usual manner to enforce specific performance of this contract.

"6. When title objections, if any, have been cured, seller joined by his wife, will give buyer, a general Warranty deed, reciting the cash consideration of $7,000.00 which is herewith paid, and buyer will execute the six notes for the balance of the consideration, as above mentioned, and will execute the deed of trust to seller above mentioned, and seller with the passage of such papers will give buyer possession of such property, premises and improvements."

Mr. A. P. Johnson, a practicing attorney of Carrizo Springs, Texas, rendered a written title opinion for the appellee, a copy of which was delivered to appellant. This opinion contained some twenty numbered paragraphs consisting principally of objections to appellant's title. There is some dispute as to whether certain of these paragraphs contained "objections to title" within the meaning of the contract, but that matter need not be discussed in this opinion.

Mr. Johnson pointed out among others the following defects in the title:

Deed of Trust lien held by Winter Garden Production Credit Association, as security for the payment of an indebtedness of $17,811.62, as well as some four further liens securing indebtedness against various tracts of land covered by the contract which aggregated approximately $6,661.29. Mr. Johnson required that all of these liens be released. While the title opinion did not cover the status of taxes, it was ascertained by the parties that there were tax liens outstanding against the property to secure the payment of $2,148.07.

Some adjustment was made with reference to certain outstanding liens, but it appears from the trial court's finding that at the time of the trial the lien indebtedness including taxes was $22,609.69. This finding is supported by the undisputed evidence.

Some further notice of appellant's pleadings is deemed advisable. Appellee filed this suit on June 24, 1945, about eight months after the contract was signed. On July 16, 1945, appellant filed his original answer and a cross-action, and upon these pleadings went to trial. The answer consisted of two special exceptions and two special denials. One of the denials related to an allegation in the petition that appellant represented that he was the owner of 1600 acres in the area involved. By the other denial, appellant denied the allegations in the petition to the effect that appellee's attorney "had refused and rejected title to said land and that defendant (appellant) has failed and refused to cure and amend such title."

By his cross-action, appellant sought specific performance of the contract. He pleaded as follows:

"Defendant further states that abstracts were prepared in accordance with terms of the contract, were examined by attorney selected by plaintiff, copy of the attorney's title opinion being furnished defendant on or about January 18, 1945: that said title opinion did not refuse and reject title to the land, but did point out certain objections; that immediately upon receipt of the title opinion defendant began work on curing the objections pointed out, and continued such work with due diligence until all objections were cured; that all objections being cured he informed plaintiff on June 2, 1945, that he was able and ready to execute and deliver the deed as provided for in the contract, and called upon plaintiff to perform his obligations under the contract, but that plaintiff refused to perform his portion of the contract and still refuses to do so.

"Defendant further states that on June 2, 1945, and at all times since, he has been able, willing and ready to convey to plaintiff 1591.56 acres of land in the sections described in the contract and deliver merchantable title as therein provided."

■ ■ The evidence conclusively shows that neither on June 2, 1945, nor at the time of the trial was the requirement met that the liens against the property be released. At such dates the tax liens above mentioned were likewise unreleased. These facts would seem to control the disposition of the case. Appellee proved that in compliance with the contract he made certain objections to appellant's title which were not met by appellant. Appellant upon his proof failed to sustain his allegation that "all objections were cured." The term "merchantable title" is synonymous with "marketable title." A title is not marketable when the abstract or record discloses that it is encumbered by mortgage or tax liens. Alling v. Vander Stucken, Tex.Civ.App., 194 S.W. 443; Crutcher v. Aiken, Tex.Civ. App., 252 S.W. 844; Echols v. Miller, Tex. Civ.App., 218 S.W. 48; Jackson v. Thompson, Tex.Civ.App., 74 S.W.2d 1055; 43 Tex.Jur. 184, § 115.

Appellant, however, contends that there is a "general custom" applicable to the facts of this case, whereby it is recognized that a vendor may discharge encumbrances against the property being sold at the time the purchase money is paid by the vendee. The authorities recognize a rule (seemingly as a matter of law rather than of custom) which is generally applicable to certain types of real estate contracts. This rule is well stated in Sachs v. Owings, 121 Va. 162, 92 S.E. 997, 1000, as follows:

"A vendee cannot elect to rescind and treat the contract as rescinded on the ground that the title is not a marketable title because there are incumbrances on the land purchased, if they are of such character and amount that he can apply the unpaid purchase money to the removal of the incumbrances. Maupin on Marketable Titles, etc., §§ 246, 304; Woodman v. Blue Grass Land Co., 125 Wis. 489, 103 N.W. 236, 104 N.W. 920. This can be done where the amount of the incumbrance is definite, does not exceed the unpaid purchase money due, is presently payable * * * and its existence is not a matter of doubt or dispute, or the situation is not such with respect thereto as to expose the vendee to litigation on the subject."

Contracts which contemplate the simultaneous performance by the parties of their respective obligations generally come under the rule, for, as stated in Kadow v. Cronin, 97 N.J.L. 301, 116 A. 427, 428,

"What each party is entitled to is that the other shall perform at the same instant of time that he does, and in contemplation of law that is exactly what takes place at every real estate settlement, although in fact the details of the settlement may occupy one or more hours or even days in the complete performance."

■ In our opinion this case does not come within the rule stated. First, there is a lack of proper pleading. Appellant's allegations were that prior to June 2, 1945, all objections to title *had been cured*. He did not plead that he had made arrangements whereby the lien and tax indebtedness would be released simultaneously with appellee's payment of the agreed purchase price. Second, if we assume the adequacy

of the pleadings, appellant's proffered evidence was insufficient to bring the case within the rule.

By a bill of exception it appears that one O. L. Smith testified (for the purpose of the bill), that he was the secretary, treasurer and manager of an organization known as the Winter Garden Production Credit Association; that said association had advanced money to appellant from time to time, and that "our agreement with him was that when the deal was closed, we would advance the money to pay the taxes, release the deed of trust, and accept the vendor's lien notes (to be executed by appellee) instead."

■ This is not a case in which the lien indebtedness was presently payable, and the money consideration agreed upon was sufficient to discharge said indebtedness. In such a case the vendee can apply the unpaid purchase money to the removal of the incumbrance. Here the plan suggested was the transfer of vendor's lien notes to a third party and receive from said party a release of existing liens. The Winter Garden Production Credit Association was neither a party to the contract nor to this suit. It had never entered into a duly authorized written agreement with appellee or appellant, that it would release its liens upon the delivery of appellee's notes to it. The facts of this case fall far short of those disclosed by the report of Stokes v. Waller, Tex.Civ.App., 230 S.W. 1085, where it appeared that

"The abstract of title was furnished and showed, according to the opinion of the attorneys examining it, that there was an outstanding lien on this and another lot, to secure an indebtedness amounting to the sum of $29,000. Stokes secured a release of this lien from the proper party, deposited it and the deed of conveyance to the vendees in the bank, and he and the agent representing him offered to deliver the release, with the deed, on payment of the balance of the consideration."

In the cited case it was held that the offer of the vendor was in substantial compliance with the contract and was sufficient.

Here the Winter Garden Production Credit Association deposited no releases in escrow, nor made any similar arrangement whereby appellee could deliver his vendor's lien notes and know with certainty that he would receive proper releases. The mere statement of an agent or officer of an association (which we suppose was some form of corporate organization) as to the future intentions of such association is insufficient for the purpose. From such testimony a court of equity could not safely conclude that the vendee would receive a marketable title, should a decree of specific performance be rendered.

■ Appellant also presents the contention that some time prior to June 2, 1945, appellee without just cause repudiated the contract. There is some evidence to the effect that appellee did intimate or say that he would not complete the transaction for the reason that it appeared that appellant could not deliver title to "approximately 1600 acres of land." Incidentally, the judgment recited that appellant "was unable to sell and convey to the plaintiff (appellee) approximately sixteen hundred acres of land as contemplated by the written contract executed by the parties." While we believe the trial court properly held that this finding was supported by the undisputed evidence, we need not discuss the matter for the reason that the issue of a repudiation of the contract by appellant prior to June 2, 1945, was not suggested by the pleadings upon which the case was tried.

■ Appellant also urges that under the contract appellee, the purchaser, was restricted to one remedy, namely, a suit for specific performance in case the seller refused to carry out his part of the contract to deliver a marketable title. This argument is based upon the wording of paragraph 5 of the contract heretofore set out, which provides that "in case seller refuses to carry out his part of the deal, buyer may proceed in the usual manner to enforce specific performance of this contract." This clause, containing the word "may" does not purport to limit the purchaser to the one remedy of specific performance. In case of the failure of the seller to produce and tender a marketable title under a contract providing therefor,

the purchaser's demand for the return of earnest money is in the nature of an action for money had and received. Clearly, under the contract here involved, a suit for specific performance is alternative to and not exclusive of the demand for the return of earnest money.

Appellant further contends that the trial court erred in refusing to allow the filing of an amended answer. The judge's qualification to the bill of exceptions presenting this point is as follows:

"This case was filed in June, 1945, and answer was filed in July, 1945, by Urban Farrow, Esq., of Carrizo Springs, who was leading and sole counsel at that time and until the appearance of Gordon Gibson, Esq., was noted February 4th, 1946. The case had been set previously for November 12th, 1945, at which time it was continued on account of the illness of the defendant who had been taken to the hospital for an emergency operation. The case was reset then for the first day of the next term, February 4th, 1946. The amended pleading was drawn by Mr. Gibson, who, according to his statement to the court, had been retained some four or five days previously, and a copy was delivered to counsel for plaintiff, as stated in the bill, on the morning of the day for which the case was set and when the case was tried. The plaintiff pleaded surprise to the filing of the Amended Answer, which in the opinion of the Court appeared to have been well taken."

The excluded answer is brought up as a part of the bill. While the original answer occupies one page of the transcript and fact issues are raised solely by denials, the proposed amended answer is some six pages in length and raises various defenses by way of waiver and estoppel.

The bill, as qualified, does not disclose an abuse of discretion on the part of the trial court. Rule 63, Texas Rules Civil Procedure.

We also hold that the trial court did not err in overruling appellant's motions for leave to file trial amendments setting up said defenses of waiver and estoppel.

It is unnecessary to discuss additional objections to the title which the trial court

considered established by the undisputed evidence. In view of the holdings above set out, error, if any, relating thereto could not affect the judgment.

Judgment for the appellee was properly rendered and is accordingly affirmed.

This opinion is adopted by the Court in lieu of the original opinion.

Appellant's motion for rehearing is overruled.